576 So.2d 1315 (1991)
STATE of Florida, Etc., Appellant,
v.
CITY OF ORLANDO, Florida, Etc., Appellee.
No. 75804.
Supreme Court of Florida.
March 14, 1991.
*1316 Lawson Lamar, State Atty. and Carol Levin Reiss, Asst. State Atty., Ninth Judicial Circuit, Orlando, for appellant.
Robert L. Hamilton, City Atty. and Steven J. Zucker, Asst. City Atty., and W. Robert Olive, Randall W. Hanna and Lucy H. Harris, Bryant, Miller and Olive, P.A., Tallahassee, for appellee.
Irby G. Pugh, Orlando, amicus curiae, for William E. Hall, Sr.
GRIMES, Justice.
This is an appeal from a judgment validating certain bonds that the City of Orlando proposes to issue. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.
The City of Orlando adopted resolutions providing for the issuance of revenue bonds in an amount not to exceed $500,000,000. The bonds, which may be issued either as tax-exempt or taxable obligations, are to be used to finance qualifying projects of local agencies either through the execution of Local Agency Loan Agreements or through the purchase of local agency securities. Local agencies are defined as governmental units in the State of Florida. Thus, the city will issue the bonds and use the proceeds to buy debt instruments of, or make loans to, such governmental units. As ultimately approved by the trial court, the qualifying projects of the local agencies may include the purchase of liability coverage contracts and the funding of self-insurance reserves as well as such projects as the building of roads, water systems, jails, utility facilities, and sports facilities.
The resolutions specifically provide that the bonds shall not be deemed to constitute a debt liability or obligation of the state or any political subdivision or municipality, except that the local agencies may be liable to the extent of their respective obligations under the loan agreements. Thus, the bonds would be payable only from the funds derived from repayment of the loans by the local agencies. The local agencies could pledge ad valorem taxes to repay the loans, but only after complying with the constitutional requirements for making such pledges. The funds would be handled pursuant to trust indentures with financial institutions, and the city, itself, could borrow some of the money pursuant to a local agency loan agreement. The final judgment states that it shall not estop any person from challenging in a collateral proceeding the validity of any specific project that is financed by a local agency or the validity of any local agency proceeding designed to authorize such financing.
The state contends that the proposed bond issue is illegal because it does not identify any specific projects to be financed, the local agencies who will receive the financing, and the revenue sources that the local agencies would use for repayment to the city. The city responds that, pursuant to the authority of section 166.111, Florida Statutes (1989), the city is authorized to issue these bonds either for the purpose of investing the proceeds at a profit or for the purpose of establishing a pool of funds to make loans to cities and counties and to invest in their debt obligations. In testimony taken at the hearing, it was represented that the city, together with the local agencies, will be able to benefit from economies associated with large-scale financing and will be able to generate income for itself that would be used for valid municipal purposes.
Our determination of this case requires us to analyze this Court's decision in State v. City of Panama City Beach, 529 So.2d 250 (Fla. 1988). In that opinion, we discussed the checkered history of municipal bond financing in Florida. We also explained that most of the bond validation cases this Court had considered in the past involved the borrowing of money to finance some kind of capital project. The legal issue usually presented in these cases was whether the use of bond proceeds for a particular project constituted a paramount *1317 public purpose. See, e.g., Orange County Indus. Dev. Auth. v. State, 427 So.2d 174 (Fla. 1983).
The case of State v. City of Panama City Beach presented a new issue. In that case, the city proposed to issue $300,000,000 in revenue bonds, with the proceeds to be invested with an insurance company under a contract that would provide a guaranteed rate of return in excess of the interest rate on the city's bonds. The estimated $1.5 million profit was to be used for park and recreational facilities, self-insurance reserves, or other municipal purposes. We recognized that this was the first time the legality of the issue of this type of bond, known as an arbitrage bond, had come before the Court. Because we concluded that the profit from the financing scheme would be used for valid municipal purposes, we upheld the bond issue.
The bond issue now before us builds upon the rationale of State v. City of Panama City Beach. The City of Orlando proposes to lend the bond proceeds to other governmental entities throughout the state. However, neither the governmental entities to whom the bond proceeds will be lent nor the revenues from which these entities will repay their loans are identified. While the final judgment places some limitation on how the governmental entities may spend the borrowed monies, no specific projects or uses for the money are identified. The amount of profits which the City of Orlando might expect cannot be estimated. Such profits as may be earned by the city will be placed in general revenue for later use as the city commissioners may determine. While ultimately approving the bond issue, the trial judge observed in a memorandum accompanying his ruling,
The chief financial officer of the city testified that the employment of this bond issue required such sophistication it could not be understood by counsel for the state and taxpayer defendant, which makes one wonder whether it might be beyond one or more individual city councilpersons, and "municipal purpose" might become something demonstrated by using mirrors.
The proposed bond issue could be invalidated because of its failure to provide enough details by which its legality can be measured. Clearly, we are unable to say whether the profits the city hopes to obtain will be used for a paramount public purpose. By allowing the city council to later decide how to spend the profits, the city has deprived this Court of the ability to determine whether the expenditures will meet a paramount public purpose.
The lack of specificity mentioned above could probably be corrected by amending the documents that control the issuance of the bonds. However, in the course of our consideration of this case, we have become concerned with a deeper problem. In State v. City of Panama City Beach, we limited our focus to how the profits from the issuance of the arbitrage bonds were to be used. In bond validation proceedings, we now believe that the overall purpose of the bond issue should be examined. When viewed in this light, it is obvious that the primary purpose of the current bond issue is to obtain proceeds that will be used to invest for a profit.
Article VIII, section 2(b) of the Florida Constitution provides:
(b) POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective.
We now conclude that borrowing money for the primary purpose of reinvestment is not a valid municipal purpose as contemplated by article VIII, section 2(b). A municipality exists in order to provide services to its inhabitants. As noted in then-Chief Justice McDonald's dissenting opinion in State v. City of Panama City Beach, we "see no valid public purpose in investing for investing's sake. Making a profit on an investment is an aspect of commerce more properly left to commercial banking and business entities." 529 So.2d at 257 (McDonald, C.J., dissenting).
*1318 We have not overlooked the fact that the city may derive an incidental benefit from the economies of large-scale financing by borrowing some of the money under a local agency agreement to use for legitimate municipal purposes. This was a primary motivation for the enactment of section 163.01 et seq., Florida Statutes (1989), known as the Florida Interlocal Cooperation Act of 1969. The act is not applicable to this case because the City of Orlando has not entered into an interlocal agreement with another public agency for the issuance of these bonds. Here, the city, acting alone, proposes to issue bonds and lend the proceeds with the intention of making a profit.
Accordingly, we recede from State v. City of Panama City Beach to the extent that it conflicts with this opinion. Our ruling shall be prospective only and shall have no effect on any bonds that may have been previously issued or approved. It does not prohibit the investment of bond proceeds pending later expenditures on the project contemplated by the bond issue. Further, our opinion should not be construed to place limitations upon either the ability of municipalities to invest for a profit any funds it may have on hand or the right to issue bonds to repay previously borrowed funds used for valid municipal projects. §§ 166.101(8), 166.111, 166.261, Fla. Stat. (1989); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978). We hold the proposed bond issue of the City of Orlando to be invalid and reverse the final judgment entered below.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.