859 So.2d 595 (2003)
DEPARTMENT OF REVENUE, Appellant,
v.
The CITY OF GAINESVILLE, Appellee.
No. 1D02-1582.
District Court of Appeal of Florida, First District.
November 26, 2003.
*596 Charlie Crist, Attorney General; Nicholas Bykowsky and Mark T. Aliff, Assistant Attorneys General, Tallahassee, for Appellant.
Kenneth R. Hart and Sean E. Fennelly of Ausley & McMullen, Tallahassee, for the Florida Telecommunications Industry Association as Amicus Curiae.
Michele Santi and John C. Dent, Jr., of Dent & Cook, Sarasota, for Edward Crapo, Alachua County Property Appraiser, as Amicus Curiae.
Robert W. Pass and E. Kelly Bittick, Jr., of Carlton Fields, P.A., Tallahassee, for Appellee.
James Baller and Sean A. Stokes of The Baller Herbst Law Group, P.C., Washington, D.C., and William J. Peebles, Tallahassee, for the Florida Municipal Electric Association as Amicus Curiae.
WOLF, C.J.
The Department of Revenue (Department) appeals from a final summary judgment entered in a declaratory judgment suit filed by the City of Gainesville (City). The trial court declared facially unconstitutional section 2 of chapter 97-197, Laws of Florida, creating section 166.047, Telecommunications services, Florida Statutes, which imposes ad valorem taxes on property owned and used by a municipality to provide telecommunications services, because the statute contravened Article VII, Section 3(a) of the Florida Constitution. For the same reason, the trial court also declared facially invalid a portion of section 3 of chapter 97-197, Laws of Florida, which amended section 196.012, Definitions, Florida Statutes, to provide that a municipality's provision of *597 two-way telecommunications services to the public does not constitute an exempt use for ad valorem tax purposes unless the services complied with certain conditions therein specified. We affirm because we believe that the property in question is being used by the City for a municipal purpose and the legislature's attempt to condition the provision of these municipal services on the payment of an amount equal to any ad valorem tax liability is in direct conflict with Article VII, Section 3(a) of the Florida Constitution.[1]
The City, doing business under the fictitious name, Gainesville Regional Utilities (GRU), sells telecommunications infrastructure and integrated telecommunications services to its citizens, charging its customers contractually agreed-upon rates for the services provided. Pursuant to the terms of the challenged statute, property owned by the City and used for providing these telecommunication services is subject to ad valorem taxation.
Section 2 of chapter 97-197, Laws of Florida, created section 166.047, which provides in pertinent part,
Telecommunications services.A telecommunications company that is a municipality or other entity of local government may obtain or hold a certificate required by chapter 364, and the obtaining or holding of said certificate serves a municipal or public purpose under the provision of s. 2(b), Art. VIII of the State Constitution, only if the municipality or other entity of local government:
. . .
(3) Notwithstanding any other provision of law, pays, on its telecommunications facilities used to provide two-way telecommunications services to the public for hire and for which a certificate is required pursuant to chapter 364, ad valorem taxes, or fees in amounts equal thereto, to any taxing jurisdiction in which the municipality or other entity of local government operates. Any entity of local government may pay and impose such ad valorem taxes or fees.
. . .
(emphasis supplied).
In section 3 of chapter 97-197, the legislature amended section 196.012(6), *598 which sets out definitions for governmental, municipal, or public purposes or functions, by adding the following language:
Providing two-way telecommunications services to the public for hire by the use of a telecommunications facility, as defined in s. 364.02(13), and for which a certificate is required under chapter 364 does not constitute an exempt use for purposes of s. 196.199, unless the telecommunications services are provided by the operator of a public-use airport, as defined by s. 332.004, for the operator's provision of telecommunications services for the airport or its tenants, concessionaires, or licensees, or unless the telecommunications services are provided by a public hospital. However, property that is being used to provide such telecommunications services on or before October 1, 1997, shall remain exempt, but such exemption expires October 1, 2004.
These sections directly conflict with Article VII, Section 3(a), Florida Constitution, providing an exemption from ad valorem taxation for municipal property used by the municipality for a municipal purpose. Article VII, Section 3(a) states,
All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation.
In City of Sarasota v. Mikos, 374 So.2d 458 (Fla.1979), the supreme court declared that this provision of the constitution is self executing:
A reading of section 3(a) of article VII clearly establishes that it is a self-executing provision and therefore does not require statutory implementation. The change in the language of chapter 196 is irrelevant because although a statute may grant additional exemptions, it may not repeal the exemptions granted municipalities by the constitution.
Id. at 460. Thus, if municipality-owned property is being used by the municipality for a public purpose, the legislature may not remove the exemption. Yet, that is precisely the purpose of section 166.047. The legislative staff analysis of chapter 97-197 states the purpose of the act: to "remove the exemption that municipalities, counties, or other entities of local government have for ad valorem taxes on real property used for the purpose of providing telecommunication services to the public." Fla. H.R. Comm. on Utils. and Communications, HB 313 (March 5, 1997) Staff Analysis (on file with Comm.). The only issue before us is whether this property which is owned by the City is being used for a municipal purpose.[2]
The provision of utility type services has always been considered to be a tax exempt municipal purpose. Ford v. Orlando Utils. Comm'n, 629 So.2d 845 (Fla.1994). Relying on language contained in Sebring Airport Auth. v. McIntyre, 783 So.2d 238 (Fla.2001), appellant and the dissent argue, however, that we should define municipal purpose narrowly. Appellant has not cited any case which supports the proposition that when property is owned and used by a municipality the term *599 "municipal purpose" as used in Article VII, Section 3(a), Florida Constitution, should be narrowly construed.[3]McIntyre and other cases cited for adopting a narrow interpretation involve situations where municipal property is being leased or utilized by a private entity. In Williams v. Jones, 326 So.2d 425, 432 (Fla.1975), a case where a municipality leased municipal property, the court stated that one person operating a commercial establishment for profit should not have an advantage over another commercial establishment also operating for purely proprietary purposes just because one is located on governmental property.[4] The same policy considerations do not apply where the property is being owned and operated by the municipality itself, in which case the focus of the municipality is the provision of service to its citizens. See, e.g. City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla.1983). In fact, we are unaware of any public policy reason when property is owned and operated by a municipality that the term "municipal purpose" should not be given its generally accepted meaning in accordance with Article VIII, Section 2(b), Florida Constitution. The Fifth District's opinion in Crotty, 775 So.2d at 978, and the opinion of this court in Page v. Fernandina Beach, 714 So.2d 1070 (Fla. 1st DCA 1998), support such a uniform construction. The Crotty court noted,
[T]he constitution exempts from taxation property owned by a municipality and used exclusively by it for municipal or public purposes. The term "municipal purpose" has been defined as encompassing all activities essential to the health, morals, protection and welfare of the municipality. State v. City of Jacksonville, 50 So.2d 532, 535 (Fla.1951). "Municipal functions" are those created or granted for the special benefit and advantage of the urban community embraced within the corporate boundaries. Chardkoff Junk Company v. City of Tampa, 102 Fla. 501, 135 So. 457 (1931). See also State ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100 (1941); City of Winter Park, 448 So.2d at 1244. Our courts have ruled that municipal functions include functions which specifically and peculiarly promote the comfort, convenience, safety and happiness of the citizens of the municipality rather than the welfare of the general public.
Crotty, 775 So.2d at 980-981 (emphasis in original).
In Page v. Fernandina Beach, we specifically noted that city owned and operated (as opposed to leased out) property was *600 exempt from taxation under a broad construction of "municipal purpose:"
Municipal operation of a marina is a legitimate municipal corporate undertaking for the comfort, convenience, safety, and happiness of the municipality's citizens. Indeed, the uncontradicted expert testimony was that operation of this marina constituted a proper municipal or public function. When a city operates a marina it owns, marina property it has not leased to a nongovernmental entity is exempt from ad valorem taxation.... But operating a marina partakes of no aspect of sovereignty and does not warrant an exemption for a marina leased to a nongovernmental operator seeking profits.
Page, 714 So.2d at 1076-1077.
Indeed, the provision of telecommunication services for the benefit of city residents constitutes a valid municipal purpose pursuant to any reasonable interpretation of the term "municipal purpose." The best evidence in this regard is the statute itself which recognizes that political subdivisions within the state may be issued certificates by the Public Service Commission to act as a telecommunications provider. See § 364.02(13), Fla. Stat.[5]
In addition, as recognized by the trial court, there is a long history in Florida and elsewhere in this country of local governments providing utility services. In discussing the provision of telecommunications services, the trial court stated,
While the provision of telecommunications services may also partake of "no aspect of sovereignty," it is no less "a legitimate municipal corporate undertaking for the comfort, convenience, safety, and happiness of the municipality's citizens" than a marina. Indeed, if anything, it is more analogous to such services as electricity and water, long recognized as serving valid municipal and public purposes. See Ford v. Orlando Utilities Comm'n, 629 So.2d 845 (Fla.1994) (property used in furnishing electricity is used for valid municipal purpose and exempt from tax under the Florida Constitution); Schultz v. Crystal River Three Participants, 686 So.2d 1391 (Fla. 5th DCA 1997) (interest of municipalities in private power plant was tax exempt); Orlando Utilities Comm'n v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969) (furnishing of electricity, power, and water was municipal purpose under Florida's 1885 Constitution.)
(footnote omitted).
Indeed, the provisions of telecommunication services are still regulated by the Public Service Commission just like water, sewer, and electricity. See Chs. 362, 366, and 367, Fla. Stat.[6] Telecommunication providers like utilities provide essential public services.
Telegraph and telephone companies as ordinarily operated are categorized as "public service corporations," and in legal phraseology as "quasi-public corporations" or "corporations affected with a public interest." They are important agencies and instrumentalities of commerce, in constant use in conducting both governmental and private affairs of the country, so that the public clearly *601 has an interest in such business. The property employed, as well as the proceeds of the business, belongs to the company, but such property is used and the business conducted for the accommodation and convenience of the public.
74 Am.Jur.2d Telecommunications § 2 (2003) (footnotes omitted).
In City of Gainesville v. State Dep't of Transp., 778 So.2d 519, 523 (Fla. 1st DCA 2001), this court recognized the power of the city to provide the utility services enumerated in chapter 90-394, section 1, Laws of Florida, and the implicit power to operate and maintain the necessary facilities to provide such services. Included among such utilities are the telecommunication services of telephone and telegraph. Ch. 90-394, § 1, at 23, Laws of Fla. (amending the charter of the City of Gainesville). The dissent argues that because competition exists in the telecommunications market somehow the provision of these services no longer constitutes a municipal purpose. In analyzing whether a provision of services constitutes a municipal purpose pursuant to Article VII, Section 3(a), the focus is whether the function promotes comfort, convenience, safety, and happiness of the citizens of the municipality. See Crotty 775 So.2d at 980; Page 714 So.2d at 1076. Utilities such as telecommunication providers are treated differently in part because of the essential nature of the service they provide. The services they provide become no less important to the citizens regardless of whether they may be provided in a competitive market.
We also find that the argument that the provisions of the act merely outline a condition for the provision of telecommunication services is unpersuasive. By requiring the payment of ad valorem taxes on property that would otherwise be exempt, as a condition of obtaining and holding a certificate under chapter 364, the legislature has attempted to indirectly achieve its desire purposetaxation of municipal telecommunications propertywhen it could not do so directly.
"It is fundamental and elementary that the legislature may not do that by indirect action which it is prohibited by the Constitution to do by direct action." Lewis v. Fla. Bar, 372 So.2d 1121, 1122 (Fla. 1979) (finding attempt to impose documentary stamp tax on transaction between Florida Bar and bank, which tax would be passed on to Bar, constituted an attempt to impose an indirect tax on an immune governmental body); Dep't of Revenue v. Fla. Boaters Ass'n, 409 So.2d 17 (Fla.1981) (holding statute attempting to define the term "boat" for purposes of tax exemption was unconstitutional where it failed to provide a reasonable definition of that term, but simply constituted a decree that certain uses of boats would render them subject to ad valorem taxation, contrary to constitutional exemption).
The legislature cannot circumvent the constitutional language contained in Article VII, Section 3(a) of the Florida Constitution, concerning exemptions of municipal property operated by the municipality for a public purpose.
The decision of the trial court is affirmed.
BENTON, J., Concurs; ERVIN, J., Dissents with opinion.
ERVIN, J., dissenting.
In my judgment, the provisions of chapter 97-197, Laws of Florida, creating section 166.047, Florida Statutes, are a proper exercise of the legislature's discretion to classify real property for ad valorem taxation. I would therefore reverse the lower court in such regard. After some deliberation, it is my opinion that the provision of telecommunications services by a municipality *602 to its citizens for hire is a governmental-proprietary function which is not exempt from taxation under Article VII, section 3(a) of the Florida Constitution. The interest is taxable, in my judgment, whether a city simply leases the property to a commercial establishment, or both owns and operates the service, as here.
In reaching my conclusion, I consider it helpful to recite some of the pertinent legislative history leading to the statute's enactment. Municipalities have only recently been statutorily authorized to compete with commercial telecommunication providers, which formerly dominated the marketplace. In 1996, the United States Congress enacted the Telecommunications Act of 1996, 47 U.S.C.A. § 151, et seq. (1996). One of the stated purposes of the Act was to facilitate the deregulation of telecommunication providers in order to create a competitive marketplace for telecommunications service. The Florida Legislature had earlier enacted chapter 95-403, Laws of Florida, which found that the competitive provision of telecommunications service is in the public interest and that the transition from the monopoly provision of such services to a fair and competitive marketplace should be encouraged and facilitated. See ch. 95-403, § 5, at 3316-17, Laws of Fla. As a result of these statutory changes, new providers of telecommunications services, including municipalities, entered the marketplace, and they were permitted to offer such services upon obtaining a certificate from the Florida Public Service Commission.
Pursuant to the statutory authorization granted to municipalities to so operate, the City of Gainesville, doing business under the fictitious name, Gainesville Regional Utilities (GRU), began selling telecommunications infrastructure and integrated telecommunications services to the general public, charging its customers contractually agreed-upon rates for the services provided. The City's utility has approximately thirty leases with seven wireless telephone companies on thirteen city towers that it either owns or manages in and around the city. The companies utilize GRU's fiber-optic network to carry their signals from their tower locations to the local points of interexchange carriers or directly to their telecommunications switches.
In light of these legislative changes, chapter 97-197, Laws of Florida, was enacted to ensure that municipalities would not be given a competitive advantage over private telecommunication providers, whose property has traditionally been subject to ad valorem taxation, by requiring the property of municipalities to share also in the tax burden, whether or not leased by them to commercial establishments or operated by the cities themselves.
In seeking a declaration below that section 166.047 and the amendment to section 196.012(6) facially conflict with Article VII, section 3(a) of the Florida Constitution, the City took the position that all of its telecommunications property is absolutely exempt from ad valorem taxation, because the constitutional exemption is self-executing and cannot be waived, modified or impaired by the Florida Legislature. The Department answered, asserting that the purpose of the legislation was to ensure that the portion of the City's telecommunications system which provides services to the public "for hire" is on an equal footing with existing telecommunications service providers, insofar as it relates to the payment of ad valorem taxes. At the hearing on summary judgment, the Department argued that the real issue before the court was whether the legislature could define what is the public purpose in the context of the statutes, as well as the context of article VII, section 3(a). As stated, the *603 lower court held the challenged statutory provisions were facially unconstitutional, thereby rejecting the Department's argument that the measures were a proper exercise of legislative prerogative in classifying property for taxation purposes by not allowing municipalities an economic advantage over competing commercial providers. I cannot agree.
My conclusion is supported by a plain reading of article VII, section (3)(a), which provides in pertinent part: "All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." Nothing in this provision remotely supports the trial court's conclusion that so long as the property is itself owned by a municipality, the type of use made of it is immaterial to a determination of its tax-exempt status. The constitutional language clearly requires the use be for a public or municipal purpose before it qualifies for the exemption. Unfortunately, subsection (3) does not provide a definition of such purpose; nevertheless, I believe it entirely unlikely that the supreme court intended the governmental-proprietary classification, discussed in pertinent Florida Supreme Court decisions, should be limited to only leasehold interests of governmentally owned property. To explain my position more clearly, a short history of applicable legal events leading up to and following the adoption of subsection (3) is helpful, in that these events demonstrate that the constitutional provision was not designed to furnish a broad exemption from taxation, as the majority and the court below have construed it, but rather to tighten the liberal construction that had previously been placed on the public-purpose exemption.
As the supreme court observed in Williams v. Jones, 326 So.2d 425, 433 (Fla. 1975), at common law, a leasehold interest in real property was treated as personal property rather than realty; therefore, it was not subject to ad valorem taxation, as was real property. This disparity in taxation treatment was brought to the attention of the supreme court in Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957), where appellant argued that the taxation of a lease of governmentally owned property conveyed to persons for a commercial use was necessary as a means of equalizing the competitive positions between business property owners that were required to pay taxes and business lessees of governmentally owned property that were not. Thus, although the various businesses were using the same county and city services, the property owners were required to shoulder the tax burden of the lessees' businesses; consequently, the lessees enjoyed an unfair economic advantage. While holding that the leased property used for commercial purposes was immune from taxation, the Sparkman court nonetheless observed that it was "not conscious of any reason why the legislature could not set up machinery for that purpose." Id. at 574.
Four years thereafter, the 1961 Florida Legislature acted on the court's invitation and created section 192.62(1), Florida Statutes (1961), authorizing ad valorem taxation of leasehold interests in governmentally owned property used "in connection with a profit making venture." The Florida Supreme Court was subsequently asked to decide whether municipally owned property leased to a commercial establishment served a public purpose, as had been expressed in a special act created by the 1955 legislature. Daytona Beach Racing & Recreational Facilities Dist. v. Paul, 179 So.2d 349 (Fla.1965). The City of Daytona Beach had leased 374 acres of city-owned property to the Daytona Beach Racing and Recreational Facilities District, which in turn subleased the property to *604 the privately owned Daytona International Speedway Corporation. When the Volusia County Tax Appraiser assessed the leased property for ad valorem taxes, the District, the City, and the corporation sued to enjoin the collection of the tax. The Florida Supreme Court decided that the exemption should be allowed, reasoning that the Speedway's contribution to the economic, commercial, and community development of the Daytona Beach area served a public purpose, and in such context, a public purpose was equivalent to a municipal purpose. Id. at 353, 355.
Because the legislative will to tax commercial activities on governmentally owned leaseholds had been judicially thwarted, the 1968 Constitutional Revision Commission drafted several pertinent provisions which were designed to tighten the definition of a municipal or public purpose, thereby radically restricting the allowable exemptions for ad valorem taxes. The Commission deleted Article IX, section 1 of the 1885 Constitution, which excepted from taxation "such property as may be exempted by law for municipal, literary, scientific, religious or charitable purpose," as well as article XVI, section 16, which provided that "the property of all corporations... shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Central to the framers' reform of ad valorem property taxation was the creation of article VII, section 3(a). It is important to understand what the new constitutional provision contemplated. As one commentator explains:
The municipal purpose exemption is unique. Unlike other "use" exemptions authorized in the constitution, it is mandatory and self-executing; it prescribes the identity of the owner and requires exclusive (rather than predominant) use by such owner for the specified exempt purpose; and (unlike other governmental purpose exemptions), it is expressly contemplated in the constitution. It does not depend on judicial creation of an "immunity" doctrine.
Robert S. Goldman, Exemptions, in 2 Fla. State & Local Taxes, ¶ 5.03[4], at 215 (Benjamin K. Phipps, ed., The Florida Bar 1984).
Another commentator outlines the three conditions that must be satisfied before one may qualify for the subsection (3) exemption:
In order to qualify for the constitutional mandatory municipal exemption, property must (1) be owned by a municipality and (2) be used exclusively by the municipality for either municipal or public purposes and (3) be within the municipality.
Talbot "Sandy" D'Alemberte, Commentary, 26 Fla. Stat. Ann. 397 (West 1995) (emphasis added). Unlike article XVI, section 16, which required that the property, in order to be exempt from taxation, be held and used exclusively for certain specified purposes, article VII, section 3(a) also explicitly requires the municipality to own the property.
Acting on the constitutional changes, the 1971 Florida Legislature adopted massive reforms to chapters 192 and 196 of the Florida Statutes. Among other things, it created a statute stating that all leasehold interests in governmental property were taxable unless exempted by law. See § 196.001, Fla. Stat. (1971). The one express exemption allowed for leaseholds was "only when the lessee serves or performs a governmental, municipal, or public purpose or function." § 196.199(2)(a), Fla. Stat. (1971). A governmental, municipal, or public purpose or function was defined as a use which is "demonstrated to perform a function or serve a governmental *605 purpose which could properly be performed or served by an appropriate governmental unit, or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds." § 196.012(5), Fla. Stat. (1971).[7]
Against this historical backdrop, the Florida Supreme Court has decided a number of cases relating to the issue of whether leaseholds of governmentally owned property were entitled to the constitutional exemption based upon the uses made of the leases. Beginning with Straughn v. Camp, 293 So.2d 689 (Fla. 1974), and continuing most recently with Sebring Airport Authority v. McIntyre, 783 So.2d 238 (Fla.2001), the court has consistently refused to hold leaseholds used for a commercial purpose exempt from ad valorem taxation. The language of the court in Williams v. Jones, 326 So.2d 425 (Fla.1975), is particularly instructive. There, commercial and residential lessees of publicly owned property on Santa Rosa Island filed suits against the county appraiser, challenging assessment of their leaseholds for ad valorem tax purposes, contending that their property was exempt from ad valorem taxation because the operation of such facilities constituted a governmental, public purpose or function exempt pursuant to section 196.012(5), Florida Statutes. In rejecting the lessees' arguments, the supreme court stated:
The operation of the commercial establishments represented by appellants' cases is purely proprietary and for profit. They are not governmental functions. If such a commercial establishment operated for profit on Panama City Beach, Miami Beach, Daytona Beach, or St. Petersburg Beach is not exempt from tax, then why should such an establishment operated for profit on Santa Rosa Island Beach be exempt? No rational basis exists for such a distinction. The exemptions contemplated under Sections 196.012(5) and 196.199(2)(a), Florida Statutes, relate to "governmental-governmental" functions as opposed to "governmental-proprietary" functions. With the exemption being so interpreted all property used by private persons and commercial enterprises is subjected to taxation either directly or indirectly through taxation on the leasehold. Thus all privately used property bears a tax burden in some manner and this is what the Constitution mandates.
Williams, 326 So.2d at 433 (emphasis added).
It is important to note that the court in Williams focused its attention on the use for which the property was made, not the fact of public ownership. Other language in Williams is also helpful to the resolution of the issue before us. The court cautioned that the revisions of article VII, section 3(a) should not be considered in isolation from those of other pertinent provisions, particularly article VII, section 2, requiring that all ad valorem taxes be at a uniform rate within each taxing unit, subject to certain exceptions. Because of the various classifications created by statutes enacted pursuant to the constitutional revisions of 1968, lessees of publicly owned lands were required to bear their fair share of the tax burden, thereby placing them on a parity with other real property in the private sector devoted to similar *606 uses. Id. at 430. The court concluded its analysis of the correlation between the applicable constitutional and statutory provisions with the following comment: "The Legislature clearly has the power to classify so that all property devoted to private use is treated on a parity and, therefore, there is an equitable distribution of the tax burden." Id. at 432 (emphasis added).
As the court intimated in Williams, article VII, section 3(a) and article VII, section 2 are simply parts of the total legal framework placed under the Finance and Taxation Article of the Florida Constitution, and are designed to narrow the occasions under which an exemption would be permitted. Other provisions include article VII, section 4, which provides in part: "By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation[.]" These provisions, taken together, may be considered emblematic of the long-recognized judicial dictum that "the Florida Constitution requires that all property used for private purposes bear its just share of the tax burden for the support of local government and education, with certain exceptions specifically enumerated in the constitution." Am Fi Inv. Corp. v. Kinney, 360 So.2d 415, 416 (Fla.1978).
Indeed, the pertinent constitutional provisions should be understood in the context of another well-established rule that tax exemptions, being in the nature of special privileges, are strictly construed against the claimant and in favor of the taxing power. See State v. Inter-American Ctr. Auth., 84 So.2d 9 (Fla.1955). As the Florida Supreme Court observed in State ex rel. Miller v. Doss, 146 Fla. 752, 2 So.2d 303, 304 (1941): "Exemptions from taxation are special favors frowned upon by the courts. They invariably cast a greater burden on other taxpayers. Statutes granting exemptions should be strictly construed." (Emphasis added.)
Therefore, if the constitutional framers' goal was truly to place all property on a parity with other property similarly situated by restricting the requirements permitting exemptions, it appears to me that the only real question pertinent to the issue of whether governmentally owned property should be exempt from taxation is the use made of it. In my judgment, the use by a municipality of telecommunications service to the public for hire, in competition with private commercial establishments, can by no stretch of the imagination be deemed in furtherance of a governmental function, i.e., those functions that concern the administration of some phase of government. See Sebring Airport Auth. v. McIntyre, 642 So.2d 1072, 1074 n. 1 (Fla.1994). And, more to the point, the organic law, as expressed in the applicable provisions of the Florida Constitution, does not explicitly restrict the legislature from determining that a use of municipal property, which would be considered proprietary if leased, may appropriately be classified for taxation purposes, notwithstanding that the use is itself conducted by a city.
In reaching its decision, the lower court appears not to have considered that the intent behind the applicable constitutional and statutory provisions was to restrict the range of the public-purpose exemption, not to enlarge it. For example, the court explained in its final summary judgment that the "scope of `municipal' or `public' purposes is broad under the Constitution," and relates to "anything that promotes the health, safety, protection or welfare of the citizens of the municipality."[8] In so concluding, the court has apparently lumped *607 the provisions of article VII, section 3(a), with article VIII, section 2(b). The latter subsection grants municipalities broad "corporate and proprietary powers to enable them to conduct municipal government" and authorizes them to "exercise any power for municipal purposes except as otherwise provided by law."
The term "municipal purpose," used in article VII, section 3(a), is not coextensive with the same term, as used in article VIII, section 2. The Florida Supreme Court warned against a comparable misconstruction in Sebring Airport Authority v. McIntyre, 783 So.2d 238 (Fla.2001), where the court rejected an argument by a commercial lessee asserting that essentially the same test should be applied to the term "public purpose" in deciding the tax-exempt status of a lease as had been applied in bond validation cases. The court made the following significant comments:
[I]n bond validation cases, a shift in the ad valorem tax burden to other taxpayers is not anticipated. In tax exemption cases, in contrast, any newly-created tax exemption necessarily involves a direct shift in tax burden from the exempt property to other, non-exempt properties.
It is perhaps both confusing and unfortunate, then, that the same term "public purpose"has traditionally been used in both of these analytical contexts. At least in tax exemption cases, however, it has been clearly established that the "governmental-governmental" public purpose standard governs.
Id. at 250-51 (footnotes omitted).
Similarly, the broad charter powers given to municipalities to conduct the performance of governance are in no way analogous to the municipal purpose standard provided in article VII, section 3(a), authorizing a narrow, self-executing exemption. The expressed constitutional purposes are clearly dissimilar, and that provided in article VIII affords no support to the City's argument for an exemption.
The lower court also determined that the City's provision of telecommunications service was no less a municipal purpose than that involving the operation of a public utility which furnishes electrical and water service to its citizens, and relied on case law that recognized it as such. See Ford v. Orlando Utils. Comm'n, 629 So.2d 845 (Fla.1994). I do not, however, consider a city's provision of such service analogous to that of telecommunications service. What the court below failed to take into consideration is the fact that municipally owned power utilities continue to enjoy the benefits of legally protected monopolies within their territorial limits. See § 366.11, Fla. Stat. (2002); Storey v. Mayo, 217 So.2d 304, 307 (Fla.1968).
In holding the statute unconstitutional, the lower court also relied on this court's opinion in Page v. City of Fernandina Beach, 714 So.2d 1070 (Fla. 1st DCA 1998), for its conclusion that a governmental-proprietary analysis is applicable only if municipal property is leased to private establishments for profit-making activities, and has no relevance regarding property that is used by the municipality. Although there is language in Page that supports the trial court's decision, I consider that such statements are dicta, and as such have no precedential effect. The comments in Page, alluded to in the majority's opinion, were made in the context of whether leases of municipally owned marina property, operated during the applicable tax years by private entities, were entitled to an exemption from ad valorem taxes. The majority held they were not, because the use made of the property was clearly proprietary.
It is true that while Page affirmed part of the trial court's final judgment which *608 held the City's operation of a beach concession was exempt, it is not clear from the opinion whether the court considered that the use was for a governmental-governmental purpose, as defined in the pertinent Florida Supreme Court decisions. For example, the court described the activities carried out in the structure as including the operation of an office for City-employed lifeguards, showers, a storage area, and restrooms. Id., at 1076. In that it is impossible to determine from the opinion whether Page decided the property was exempt because the use of the marina was for a governmental purpose, rather than that at the time of the tax assessment the property was simply not leased to a for-profit entity, I do not consider the language in Page, indicating that the use of municipally operated property is immaterial in deciding such property's tax-exempt status, to control the issue presented in this appeal.
Because it is unclear from some of the broad language used in the pertinent Florida Supreme Court decisions above discussed whether the court intended to limit their effect only to municipally owned property leased to private entities that conducted activities thereon for proprietary purposes, I would certify to the Florida Supreme Court the following questions to be of great public importance:
1. IS THE ANALYSIS OF THE FLORIDA SUPREME COURT, AS USED IN WILLIAMS v. JONES, 326 So.2d 425 (Fla.1975), AND OTHER PERTINENT DECISIONS PERTAINING TO A GOVERNMENTAL-PROPRIETARY USE OF PROPERTY OWNED BY THE PUBLIC ENTITY, BUT LEASED BY IT TO A PRIVATE COMMERCIAL ENTITY, APPLICABLE IN REGARD TO STATUTES THAT SUBJECT AD VALOREM TAXES ON PROPERTY BOTH OWNED AND OPERATED BY A MUNICIPALITY?
2. IF THE USE IS PROPERLY DETERMINED GOVERNMENTAL-PROPRIETARY, WOULD THE PROPERTY STILL BE EXEMPT FROM AD VALOREM TAXATION UNDER ARTICLE VII, SECTION 3(A) OF THE FLORIDA CONSTITUTION, BY REASON OF THE MUNICIPALITY'S OWNERSHIP AND OPERATION OF A TELECOMMUNICATIONS SERVICE, THEREBY RENDERING STATUTES SEEKING TO IMPOSE TAXES UPON SUCH PROPERTY VIOLATIVE OF THE CONSTITUTIONAL PROVISION?
For all of the above reasons, I would reverse the summary judgment and hold the statutes in question constitutionally valid.
NOTES
[1] The Department also complains that the trial court erred in declaring the statutes facially unconstitutional because, in so doing, it incorrectly applied the legal standard for an "as applied" challenge. Among other things, it argues that the correct standard to be used in determining whether a statute is facially constitutional is if it could be constitutionally applied to any hypothetical set of factual circumstances. See State v. Bales, 343 So.2d 9 (Fla.1977). The Department posits that there are a number of circumstances under which the act could be constitutionally applied, such as when a city owns and operates telecommunications property outside the county in competition with private companies, or when such property is leased for a proprietary purpose, rather than owned.

In our judgment, the statutes do not on their face reasonably imply any permissible circumstances that would allow them to survive a facial constitutional challenge. Section 166.047(3) mandates that each municipality shall pay "on its telecommunications facilities... ad valorem taxes ... to any taxing jurisdiction in which the municipality ... operates." In comparing this broad, all-inclusive language with that in article VII, section 3(a), requiring that all property owned by a municipality and used by it exclusively for a public purpose be exempt from taxes, the argued hypothetical scenarios that would facially validate the enactments are simply not apparent. It is true that the second sentence of article VII, section 3(a) authorizes the legislature to carve out one specific class of municipal property that can be taxed, i.e., "property outside the municipality"; nevertheless, the constitutional language does not contemplate that the legislature may lump together that which it forbids and that which it permits. It is rather the legislature's obligation to draft a law that generally tracks the constitutionally drawn line between property inside a municipality's boundaries and property outside them.
[2] Inquiry into whether property is being used for a municipal purpose is necessary because municipal property is only exempt from taxation, whereas county and state properties enjoy immunity from taxation. See Canaveral Port Auth. v. Dep't of Revenue, 690 So.2d 1226 (Fla.1996).
[3] Appellant relies heavily on the case of Greater Orlando Aviation Auth. v. Crotty, 775 So.2d 978 (Fla. 5th DCA 2000), in which the court found that the operation of a hotel on airport property owned by the city and which was not subject to a lease was subject to ad valorem taxes. Crotty is factually distinguishable from the instant case for a number of reasons. Most importantly, the municipal property was a hotel being operated by a private entity, the Hyatt Corporation, pursuant to an agreement specifically requiring Hyatt to maximize profits. Id. at 980. In the instant case the telecommunications system is operated and managed by the city. Further, the purpose of the hotel in Crotty was not to serve citizens of Orlando but to "serve persons who reside elsewhere and therefore require public accommodations." Crotty at 981. In the instant case the telecommunications services are provided for the benefit of the citizens of Gainesville. Based on the foregoing, Crotty does not address the situation we have before us where municipally owned property is being used by the municipality for the benefit of its own citizens.
[4] In fact in cases where a government itself is acting purely for the purpose of making profit there may be no legitimate municipal purpose. See State v. City of Orlando, 576 So.2d 1315 (Fla.1991).
[5] The condition that the legislature attempts to place on the provision of telecommunication servicesthe payment of an amount that equates to ad valorem tax liabilitydoes not negate the fact that the provision of such services constitutes a valid municipal purpose under the constitution.
[6] In addition, telecommunication services were specifically included in the public service tax assessed by municipalities. See Ch. 98-277, Laws of Fla.
[7] This provision now appears in subsection (6). § 196.012(6), Fla. Stat. (2002). The definition does not explicitly exclude profit-making, commercial enterprises, nor does it express the broader governmental-governmental/governmental-proprietary dichotomy announced by the Florida Supreme Court in Williams v. Jones, 326 So.2d 425, 433 (Fla. 1975), discussed infra.
[8] The above quoted activities have been defined by the Florida Supreme Court as proprietary functions. See McIntyre, 642 So.2d at 1074 n. 1.