MICHAEL E. KIRBY, Judge.
| TPlaintiff, Brenda Kraft Verges, appeals the trial court judgment awarding fees to her former attorneys, Orrill, Cordell & Beary, LLC (“OCB”), in the amount of $112,850.00 plus legal interest from the date of demand and all costs. For reasons that follow, we amend the trial court judg *312 ment (1) to reduce the amount of fees awarded to OCB, and (2) to change the award of interest from date of judicial demand to date of the trial court judgment.
The issue in this case is the amount of fees owed by plaintiff to OCB. Plaintiff filed suit alleging that immovable property owned by her was damaged as a result of construction of an adjacent hotel. She was represented by OCB from September 2001 until the firm withdrew from the case in April 2003. Plaintiffs then-husband, Wade Verges, hired OCB through a power of attorney from plaintiff. Mr. Verges was not a party to plaintiffs suit. Shortly after OCB withdrew from the case, plaintiff retained A.J. Hand and Wayne Jablo-nowski from the firm of Hulse & Wanek. Mr. Jablonowski continued to represent plaintiff after he left Hulse & Wanek. Plaintiffs property damage claim settled in 2007 for $440,000.00.
|2In June 2003, shortly after withdrawing from the case, OCB filed a petition of intervention for attorney’s fees. Attached to the petition was the contract between OCB, plaintiff and Mr. Verges. The contract stated that the fee owed to OCB would be 30% of any settlement, judgment, collection or other recovery received by plaintiff or her ex-husband in the underlying litigation entitled “Brenda Verges v. Dimension Development Co., Inc.” Trial on the intervention was held after the case settled. Testimony was offered by plaintiff, plaintiffs now ex-husband, Wade Verges, attorney Christopher Beary of OCB, and several other defense attorneys who were involved in plaintiffs lawsuit. Much of the testimony centered on the complexity of the case and the amount of work performed by Mr. Beary before his withdrawal from the case.
Following trial, the trial court awarded OCB attorney’s fees in the amount of $112,850.00 plus legal interest from the date of judicial demand and all costs. The trial court stated in reasons for judgment that OCB proved the hourly value of their services to be $112,850.00, which the court found to be fair compensation to OCB. In arriving at this figure, the trial court found that the value of plaintiffs claim was proven to be at its highest immediately prior to mediation in April 2003. The court found that plaintiff increased her demand at the mediation against the advice of OCB, and sought to obtain a net settlement of $650,000.00 and retain ownership of her building. The court accepted Mr. Beary’s testimony that he counseled plaintiff not to take this position, and withdrew from the case when she refused to accept that advice. Although noting that OCB had only obtained an official settlement offer of $175,000.00, the court found that $440,000.00 was an accurate valuation of plaintiffs claim given the fact that plaintiffs own experts testified that her claim was not as substantial as she may have believed.
|aThe trial court found that the standard set forth in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), does not apply in this case. We agree. The Saucier case involved a fee dispute between plaintiffs former and successor attorneys, all of whom were hired on a contingency fee basis. Here, we are faced with a situation in which plaintiffs former attorneys were representing her on a contingency fee basis, whereas her successor attorneys represented her on an hourly rate basis. Although OCB initially handled plaintiffs case on an hourly rate basis, OCB agreed to accept the case on a 30% contingency fee basis in September 2002.[1]
*313 The trial court found two Third Circuit cases to be persuasive in this case: Wright v. Tschirn, 2003-1676 (La.App. 3 Cir.6/9/04), 875 So.2d 1037 and Lytle v. Commercial Insurance Company of Newark, New Jersey, 285 So.2d 289 (La.App. 3 Cir.1973). Both cases involved attorneys who were awarded fees for their work performed on behalf of clients with whom they terminated their representation prior to the conclusion of their cases. While this Court is not bound by decisions of other circuits, we note that these cases are distinguishable in that there were no allegations in either of those cases that the attorney’s termination of his representation of his client had any adverse effect on his client’s interests. In the instant ease, OCB terminated its representation of plaintiff in the middle of her case, and plaintiff has alleged that this action prejudiced her because she had to quickly hire new counsel in the middle of her litigation and the lawyers who agreed to take her case charged on an hourly rate basis for their services.
14Plaintiff is not arguing that OCB’s withdrawal from the case should result in no award of attorney’s fees to that firm. However, she argues that the amount awarded is excessive. We agree. There were certain extra expenses that plaintiff incurred as a result of OCB’s withdrawal. A substantial portion of the fees paid to her successor attorneys represented review of work already performed by OCB. Additionally, the successor law firm hired by plaintiff following OCB’s withdrawal charged an hourly rate of $175.00, a higher rate than that initially charged by OCB prior to the contingency fee arrangement.
OCB argues that it withdrew from representing plaintiff in the middle of the case because plaintiff was being unreasonable in her settlement demands. But that was not the reason OCB gave to plaintiff in its letter of April 16, 2003 notifying her of the firm’s withdrawal from her case. The letter, signed by R. Ray Orrill, Jr. and W. Christopher Beary, set forth their opinions as to the value of plaintiffs claim and how they differed from plaintiffs expectations. There is nothing in the letter suggesting that OCB was withdrawing from the case because plaintiff was an unreasonably difficult client. A key paragraph in the letter states:
Consequently, it is time that we make another business decision to withdraw from your representation at this time. We cannot afford to put any more time into this case because it would, in essence, mean that we would be working for free and we have too many other irons in the fire to do what is entailed to get this matter ready for trial and to try it, under the circumstances.
Their letter concluded with the sentence, “We are sorry that we cannot complete this case for you but, as you can readily understand, the numbers just don’t work for us.”
The only evidence to support OCB’s claim that plaintiff was being unreasonable in her settlement demands was the self-serving testimony of Mr. |fiBeary at the trial on the intervention. Mr. Orrill and Mr. Beary spelled out their reasons for OCB’s withdrawal from plaintiffs case in its letter of April 16, 2003, and did not mention any unreasonableness on the part of plaintiff. The letter made clear that OCB was withdrawing from its representa *314 tion of plaintiff because the case no longer seemed profitable to them.
A lawyer may withdraw from representing a client if the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client. State Bar Articles of Incorporation, Art. 16, Rules of Professional Conduct, Rule 1.16(b)(6). We find that OCB presented sufficient evidence at trial to show that their continued representation of plaintiff would have resulted in an unreasonable financial burden on the firm. Therefore, their -withdrawal from the case was not wrongful.
However, OCB’s decision to withdraw from this case, while arguably in the firm’s best interests, nonetheless had a material adverse effect on plaintiff. We note that Rule 1.16(b)(1) of the Rules of Professional Conduct states that a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client. To pursue her claim to its conclusion, plaintiff was forced to retain new counsel, for which she was charged an hourly rate. This resulted in the duplication of some of the work already performed in that plaintiffs successor attorneys had to review all of OCB’s work in order to familiarize themselves with plaintiffs case, in addition to doing the remainder of the work involved up to the settlement of the case. The review of OCB’s work was an expense that plaintiff would not have incurred but for OCB’s withdrawal midway through the case. Additionally, the hourly rate charged by | ^plaintiffs successor counsel was $25.00 higher than the hourly rate charged by OCB before the firm agreed to take the ease on a contingency fee arrangement.
At trial, Mr. Beary testified that he did not maintain contemporaneous time records in this matter once the firm agreed to a contingency fee arrangement. He offered his estimate of the hours of work performed and the fees earned by the firm based on the $150.00 hourly rate that the firm initially charged plaintiff. A written estimate of hours of work performed was introduced into evidence, and included a total amount of $112,850.00 in fees earned on an hourly rate basis. This estimate included $7,100.00 in fees previously waived by the firm in consideration for accepting the case on a contingency fee basis.
There is no mention in the written estimate of the $5,000.00 in fees previously paid to OCB by plaintiff. However, Mr. Beary testified that his estimate of fees was for the work performed by OCB during the period that the contingency fee arrangement was in effect, plus $7,100.00, which represented the approximate amount of fees waived by the firm in consideration for entering into the contingency fee arrangement. Based on this testimony, we conclude that the estimate of fees did not include the $5,000.00 payment previously made by plaintiff.
We have found an error in the calculations provided by OCB in their written estimate of fees earned. In item #4 of OCB exhibit # 15, OCB estimated that the firm spent 306 hours on depositions. At an hourly rate of $150.00, the amount claimed for depositions should have been $45,900.00, not $49,500.00 as stated in exhibit # 15. This transposition error resulted in an increase of $8,600.00 in OCB’s estimate. The corrected total of OCB’s estimate is $109,250.00.
17The trial court is vested with great discretion in arriving at an award of attorney’s fees, and the exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Filson v. Windsor Court Hotel, *315 2007-0755, p. 6 (La.App. 4 Cir. 7/23/08), 990 So.2d 63, 67. The trial court accepted the estimates offered by OCB, and awarded OCB $112,850.00 in fees representing the hourly value of their services at a billing rate of $150.00 per hour. With the exception of the $3,600.00 transposition error in OCB’s estimate, we find no abuse of the trial comb’s discretion in its calculation of the hourly value of OCB’s services.
However, we find that the court abused its discretion in not deducting an amount representing fees charged by the successor attorneys in reviewing OCB’s work in order to familiarize themselves with the ease. The billing records of the successor attorneys were introduced into evidence without any testimony. Plaintiff has paid $54,356.12 to her successor attorneys. Our review of their billing records establishes that $15,288.40 of that amount represents review of work performed by OCB. OCB’s withdrawal in the middle of the case caused this review to be necessary. Plaintiff should not have to pay twice for the same work. We find that any additional expense incurred by plaintiff as a result of OCB’s withdrawal should have been deducted from the fees awarded to OCB.
We find the trial court also abused its discretion in not deducting an amount equal to the extra cost plaintiff incurred due to the fact that her successor attorneys billed at an hourly rate of $175.00, rather than the $150.00 hourly rate arrangement she had with OCB prior to the agreement to switch to a contingency fee arrangement. After subtracting the hours earned by the successor attorneys for this | ^duplicative work, 215.85 hours billed at the $175.00 hourly rate remain.[2] This re-suited in an extra cost to plaintiff of $5,396.25.
Accordingly, we amend the trial court’s $112,850.00 award of attorney’s fees by deducting the following amounts: (1) $15,288.40 representing charges by the successor attorneys for review of work performed by OCB, (2) $5,396.25 representing the extra amount plaintiff was required to pay her successor attorneys due to their higher hourly rate of $175.00 and (3) $3,600.00 representing the transposition error in OCB’s estimate of fees earned. The resulting total is $88,565.35.
Plaintiff also argues that the trial court erred in awarding interest on the award of attorney’s fees to OCB. We find that an award of interest is warranted. However, we find that the trial court erred in awarding interest from date of judicial demand.
Shortly after the plaintiffs case settled in 2007, OCB requested that plaintiff deposit $154,933.32 into the registry of the court for purposes of OCB’s June 2003 intervention for attorney’s fees. By order dated October 11, 2007, the trial court granted plaintiffs motion to deposit these funds into the registry of the court. If the amount of attorney’s fees owed to OCB had been ascertainable when the intervention was filed, then OCB would be entitled to interest from the date of judicial demand until the date that these funds were placed in the registry of the court. See, Reeves v. Winborn, 153 So.2d 531 (La.App. 1 Cir.1963). However, in this case, the amount of attorney’s fees due to OCB was not ascertainable until awarded by the trial court. Therefore, OCB is only entitled to interest on the award | nof attorney’s fees from the date of the judgment, and not *316 from the date of judicial demand. Alexander v. Burroughs Corp., 859 So.2d 607 (La.1978).
For the reasons stated above, we amend the trial court judgment to reduce the award of attorney’s fees to OCB from $112,850.00 to $88,565.35. The judgment is further amended to award interest only from the date of the trial court judgment, June 9, 2008. In all other respects, the trial court judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
MURRAY, J. dissents in part and assigns reasons.

. According to Mr. Beary, plaintiff and Mr. Verges had only partially paid the firm’s in *313 voices during the time that plaintiff's case was being handled on an hourly rate basis. As part of the agreement to change the fee arrangement from an hourly rate to a 30% contingency fee, OCB agreed to waive the $7,162.50 unpaid balance owed by plaintiff and Mr. Verges as of September 5, 2002.

. We note that when Mr. Jablonowski continued to represent plaintiff after leaving the firm of Hulse and Wanek, he charged an hourly rate of $150.00. Because this is the same hourly rate charged by OCB prior to the contingency fee arrangement, we have not included the hours charged separately by Mr. Jablonowski in this calculation.