961 So.2d 541 (2007)
SUCCESSION OF James Timothy FLANIGAN.
No. 2006-CA-1402.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 2007.
Michael H. Rasch, Preston L. Hayes, Chehardy Sherman Ellis Murray Recile Griffith Stakelum & Hayes, L.L.P., Metairie, LA, for Appellant, George E. Bain.
S. Ault Hootsell III, Harry M. Barton, Phelps Dunbar, L.L.P., New Orleans, LA, for Fidelity Management Trust Company.
Don M. Richard, Law Office of Don M. Richard, Metairie, LA, J.D. Shaw, Starkville, MS, for Appellee, Nason Landreneau.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The appellant, Mr. George E. Bain, appeals from a summary judgment rendered in favor of the appellee, Mr. Nason Landreneau, recognizing him as a beneficiary on the Fidelity Investments Retirement Account of the late James Timothy Flanigan, M.D. ("Dr. Flanigan"). We affirm the judgment of the trial court.

FACTS
Dr. Flanigan was diagnosed with pancreatic cancer in May 2003. On June 3, 2003, Dr. Flanigan completed a "Fidelity Retirement Plan Beneficiary Designation" form naming Mr. Bain and Ms. Gaynelle Q. Mitchell as primary beneficiaries on his retirement account, Fidelity Investments Account No. XXX-XXXXXX.[1] Each beneficiary was to receive fifty percent (50%) of the funds from the account in the event of Dr. *542 Flanigan's death. On May 23, 2004, the designated beneficiaries on Dr. Flanigan's retirement account were changed to Mr. Nason Landreneau and Ms. Mitchell. The change was made via the Internet using the Fidelity Investments website. Fifty-two days later, on July 13, 2004, Dr. Flanigan died.
Succession proceedings commenced on July 21, 2004, with the filing of the petition to probate Dr. Flanigan's last will and testament in the district court. Shortly thereafter, Mr. Bain filed a "Petition to Determine Rightful Beneficiary and Request for the Issuance of Injunctive Relief," alleging that Dr. Flanigan lacked the physical and mental capacity to change the beneficiary designation on the Fidelity Investments Retirement Account due to his heavily medicated condition. Specifically, the petition alleges that at the time the change occurred Dr. Flanigan was being treated intravenously with an "`IV cocktail'" consisting of the drugs Dilaudid, Valium, and Phenergan. Mr. Bain further alleges that in addition to Dr. Flanigan, two other persons knew his personal identification number ("PIN") code, allowing them access to his retirement account via the Fidelity website on the Internet.[2]
Mr. Bain alleges that at the time of Dr. Flanigan's death, the retirement account had a balance of approximately $100,000.00 to $120,000.00 and that the amount in dispute was half of the total balance or approximately $50,000.00 to $60,000.00. He also alleges that upon learning of the change in the beneficiary designation, he personally contacted Fidelity Investments to request that the company not disburse the funds from the retirement account until a determination of the rightful beneficiary was made.[3]
Shortly after Mr. Bain filed his petition and request for injunctive relief, Fidelity Investments, the Estate of James T. Flanigan, Ms. Mitchell, and Mr. Bain entered into a consent judgment on October 8, 2004, in which the court ordered Fidelity Investments to withhold from disbursement the disputed portion of the retirement account funds until the rightful beneficiaries were determined.
On March 14, 2006, Mr. Nason Landreneau filed a motion for summary judgment arguing that Dr. Flanigan had entered into a valid agreement with Fidelity Investments to designate Mr. Landreneau and Ms. Mitchell as the beneficiaries on his Fidelity Investment Retirement Account. In support of his motion, Mr. Landreneau submitted a copy of the "Fidelity Account Profile" that designates him as a beneficiary on Dr. Flanigan's retirement account as well as a copy of a letter from Fidelity Investments to Ms. Mitchell, stating that she and Mr. Landreneau were designated equal primary beneficiaries on the account on May 23, 2004, via its website.
Mr. Landreneau argued that La. R.S. 9:2449[4] mandates that the benefits of an *543 individual retirement account are to be paid to the designated beneficiary according to the account agreement, and, therefore, Fidelity Investments was bound by the agreement it made with Dr. Flanigan to distribute the funds in his retirement account according to his instructions. Because the beneficiary designation is a valid binding contract, Mr. Landreneau argued, any attempt by Mr. Bain to challenge Dr. Flanigan's expressed designation of the named beneficiaries must be brought pursuant to La. Civ.Code article 1926, relative to an attack on a noninterdicted decedent's contracts. Additionally, Mr. Landreneau argued that in the absence of an allegation and/or evidence of fraud, Mr. Bain had no basis to attack the valid contract entered into by Dr. Flanigan with Fidelity Investments designating the beneficiaries on his retirement account. He argued that Mr. Landreneau's insinuation that fraud may have occurred when the beneficiary designation was changed via Fidelity's website, because persons other than Dr. Flanigan had his PIN code to access the account, was not sufficient to overcome a motion for summary judgment.
In opposition to Mr. Landreneau's motion, Mr. Bain argued that Dr. Flanigan lacked the mental capacity on May 23, 2004 to change the beneficiary designation on his retirement account due to his medicated condition. In support, he submitted the affidavit of Mr. Michael Fitzgerald, a close friend of Dr. Flanigan, who stated that as of March 2004, Dr. Flanigan was at all times heavily medicated, which caused him to be confused and extremely disoriented. Mr. Fitzgerald also averred that based on Dr. Flanigan's confused and disoriented state during frequent visits with him, he opined that Dr. Flanigan lacked the physical and mental capacity to knowingly change the beneficiary on a retirement account.
Mr. Bain also submitted the affidavit of Dr. V.S. Sottiurai, a licensed physician who treated Dr. Flanigan. Dr. Sottiurai averred that he frequently visited Dr. Flanigan in the early stages of his pancreatic cancer to assess his condition. However, in the later stages, he often contacted Dr. Flanigan by telephone and, during these communications, it was apparent to him that Dr. Flanigan was extremely disoriented as a result of his medication and deteriorating condition.
Following a hearing, the trial court vacated the October 8, 2004 consent judgment and granted Mr. Landreneau's motion for summary judgment. The trial court found that La. Civ.Code article 1926 was dispositive and that Mr. Bain failed to show any genuine issue of material fact with regard to the validity of the contract entered into by Dr. Flanigan with Fidelity Investments designating Ms. Mitchell and Mr. Landreneau as the primary beneficiaries on his retirement account.

STANDARD OF REVIEW
The proper standard of review for an appellate court considering summary judgment is de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties Ltd., *544 93-1480, p. 1 (La.4/11/94), 634 So.2d 1180, 1182. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). La. C.C.P. art. 966(C)(2) provides, in pertinent part:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. [Emphasis added.]

LAW AND DISCUSSION
Four elements are required for confection of a valid contract: (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful cause. Fairbanks v. Tulane University, 98-1228, p. 4 (La.App. 4 Cir. 3/31/99), 731 So.2d 983; see also La. Civ.Code arts. 1918, 1927, 1966 and 1971. While the capacity to contract is presumed, La. Civ.Code article 1926 provides that:
A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death.
Clearly, pursuant to La. Civ.Code article 1926, a contract entered into by a person deprived of reason may be attacked after his death in only four circumstances: (1) when the contract is gratuitous, (2) when the contract evidences a lack of understanding, (3) when the contract was made within thirty days of death, or (4) when the application for interdiction was filed before his death. The parties agree that the third and fourth circumstances do not apply in this case as Dr. Flanigan entered into the contract with Fidelity Investments to change the beneficiary designation to Ms. Mitchell and Mr. Landreneau fifty-two (52) days before his death and no application for the interdiction of Dr. Flanigan was ever filed. Thus, in order to attack the contract after Dr. Flanigan's death, Mr. Bain had to establish that either the change of beneficiary provision was gratuitous or that the contract itself evidenced a lack of understanding.
As the party moving for summary judgment, Mr. Landreneau had the burden of proving the change of beneficiary on Dr. Flanigan's retirement account was valid. To satisfy his burden, he submitted a copy of the "Fidelity Account Profile" that designates him as a beneficiary on the account as well as a copy of a letter from Fidelity Investments to Ms. Mitchell, stating that she and Mr. Landreneau were designated equal primary beneficiaries on the account on May 23, 2004, via its website. The burden then shifted to Mr. Bain to produce *545 any evidence such as depositions, affidavits, answers to interrogatories, or admissions to demonstrate that the change of beneficiary contract was a gratuitous act or itself evidenced a lack of understanding. He must then be able to show that he will be able to satisfy his evidentiary burden of proof at trial.
Mr. Bain submitted the affidavits of Mr. Fitzgerald and Dr. Sottiurai as proof of Dr. Flanigan's mental incapacity at the time of contracting. The two affidavits, while admissible, are not sufficient to prove that the contract was gratuitous or that it evidences a lack of understanding. In applying La. Civ.Code article 1926 to this case, it is presumed that Dr. Flanigan, although not interdicted, was "deprived of reason" at the time the change of beneficiary was made. Even though Dr. Flanigan entered into that contract, it may not be attacked after his death on the grounds of incapacity unless one of the four circumstances is present. None of those circumstances is present here. Considering the evidence or lack thereof submitted by the parties for the purpose of summary judgment, the contract is unassailable.
Mr. Bain cites the case of Manuel v. New York Life Insurance, XXXX-XXXX (La. App. 5 Cir. 10/15/03), 860 So.2d 41, in arguing that the affidavits are sufficient to attack the validity of the beneficiary designation on Dr. Flanigan's retirement account. In Manuel, at issue was a life insurance policy purchased by Chris LaBorde from New York Life Insurance and Annuity Corporation ("New York Life"). On February 2, 1998, Mr. LaBorde submitted a surrender form on the insurance policy and, fifteen days later, murdered his wife and then committed suicide. His children filed suit seeking full death benefits under the policy and challenged the validity of the surrender submission. In opposition to a motion for summary judgment filed by New York Life, the children argued that Mr. LaBorde's surrender of the policy was a contract governed by La. Civ.Code article 1926 and submitted the affidavits of the decedent's friends and two psychiatric witnesses who averred that he lacked the metal capacity to surrender his insurance policy on the date in question. The Court denied New York Life's motion, finding that La. Civ.Code article 1926 governed and that the affidavits satisfied the plaintiffs' burden of proving the existence of a material fact as to Mr. LaBorde's mental capacity at the time of the surrender.
We find Mr. Bain's reliance on the Manuel case is misplaced. Mr. LaBorde had surrendered the policy fifteen days prior to his death, or well within the thirty-day period provided by La. Civ.Code article 1926. In the instant case, the change of beneficiaries on Dr. Flanigan's retirement account occurred fifty-two days prior to his death, clearly outside the thirty-day period.
In concluding, we find that Mr. Bain did not satisfy his burden of proving that the change of beneficiary designation made on May 23, 2004 exhibited a lack of understanding or was a gratuitous contract. As there is no genuine issue of material fact as to the validity of the change of beneficiary designation on Dr. Flanigan's retirement account naming Ms. Mitchell and Mr. Landreneau as the beneficiaries, summary judgment is appropriate as a matter of law.

DECREE
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Dr. Flanigan established the retirement account in August 1983.
[2] Mr. Bain did not name the two persons who are alleged to have had access to Dr. Flanigan's retirement account, nor did he allege that either person made the change of the beneficiary designation.
[3] Due to the dispute, Fidelity Investments temporarily restricted the disbursement of the funds, but informed Mr. Bain that he would need a court order enjoining it from disbursing the funds to the designated beneficiaries.
[4] La. R.S. 9:2449, relative to Individual retirement accounts; payment of benefits, provides:

A. Any benefits payable by reason of death from an individual retirement account established in accordance with the provisions of 26 U.S.C. 408, as amended, shall be paid as provided in the individual retirement account agreement to the designated beneficiary of the account. Such payment shall be a valid and sufficient release and discharge of the account holder for the payment or delivery so made and shall relieve the trustee, custodian, insurance company or other account fiduciary from all adverse claims thereto by a person claiming as a surviving or former spouse or a successor to such a spouse.
B. No account holder paying a beneficiary in accordance with this Section shall be liable to the estate or any heir of the decedent nor shall the account holder be liable for any estate, inheritance, or succession taxes which may be due the estate.
C. The provisions of this Section shall apply notwithstanding the fact the decedent designates a beneficiary by last will and testament.