| | | |
|---|---|---|
| LOUISE KALTENBAUGH, PH.D. AND KATHERINE ROBINSON, PH.D. | * | NO. 2022-CA-0092 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| BOARD OF SUPERVISORS, SOUTHERN UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE AT BATON ROUGE (SOUTHERN UNIVERSITY AT NEW ORLEANS CAMPUS) | * | STATE OF LOUISIANA |

* * * * * * *

CONSOLIDATED WITH:                          CONSOLIDATED WITH:

DAYANAND THANGADA,                          NO. 2022-CA-0093
AUDREY S. MCGEE, AND
SHIRLEY A. WILLIAMS-SCOTT,
PH.D.

VERSUS

BOARD OF SUPERVISORS,
SOUTHERN UNIVERSITY AND
AGRICULTURAL AND
MECHANICAL COLLEGE AT
BATON ROUGE (SOUTHERN
UNIVERSITY AT NEW ORLEANS
CAMPUS)

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2006-04126, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Pro
Tempore James F. McKay, III)

Audrey Simpson McGee
330 Melissa Way
College Park, GA 30349

       APPELLANT

Willie M. Zanders, Sr.
ATTORNEY AT LAW
221 Briarhaven Drive
Baton Rouge, LA 70810

APPELLEE

**AFFIRMED**
**AUGUST 24, 2022**

DNA

DLD

JFM

This case concerns a dispute regarding attorney fees and costs. Appellant, Audrey Simpson McGee (hereinafter "Ms. McGee"), appeals the trial court's November 30, 2021 judgment, which granted attorney fees and costs to Appellee, Willie M. Zanders (hereinafter "Mr. Zanders"). For the following reasons, we affirm the trial court's judgment.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The instant lawsuit arises from complicated and protracted litigation, which was the subject of a previous appeal to this Court and resulted in the Opinion of *Kaltenbaugh v. Bd. of Supervisors*, 2018-1085, 2018-1086 (La. App. 4 Cir. 10/23/19), 282 So.3d 1133. Therein, this Court summarized the factual and procedural background of the underlying lawsuit as follows:

> In August 2005, [Southern University New Orleans (hereinafter "SUNO")] sustained massive damage from Hurricane Katrina. Thereafter, the Board [of Supervisors, Southern University and Agricultural and Mechanical College at Baton Rouge (hereinafter the "Board")] adopted a Force Majeure Exigency Plan ("Force Majeure Plan"), which applied exclusively to the SUNO campus. The Board adopted these policies in response to what it saw as the emergency and unforeseeable circumstances which made continuation of employment of faculty and staff, tenured and untenured, classified and unclassified, impossible. Thus, the Board adopted a "new streamlined program for SUNO which allowed them to make only limited [job] offerings." The program resulted in the elimination of 19 degree

1

programs at SUNO. Chief among those was SUNO's programs in Secondary Education and Biology.

Under the "streamlined" program, the SUNO faculty was reduced from a July 1, 2005 total of 163 employees to a May 2006 count of 92 active employees. The remainder either voluntarily left or were placed on furlough. As of May 2006, 31 tenured teachers were placed on furlough and 10 voluntarily departed through resignation or retirement. . . .

On May 12, 2006, two furloughed SUNO professors, Louise Kaltenbaugh, Ph.D., a tenured associate professor in the College of Education; and Katherine Robinson, Ph.D, a tenured assistant professor in the College of Education; sued the Board, alleging violations of due process . . . .

. . . .

On July 5, 2006, Dayanand Thangada, Audrey McGee, and Shirley [Williams-Scott], Ph.D., filed a [] suit in Orleans Parish Civil District Court alleging that SUNO had furloughed them or not re-called them to work without due process, and seeking damages and attorney[] fees.

On September 29, 2006, Dr. Robert Perry, a tenured faculty member at SUNO who taught mathematics, biology, physics and other science courses, joined the lawsuit with three co-plaintiffs, Mr. Thangada, a tenured assistant professor in the College of Business; Dr. Williams-Scott, a tenured full professor in the Science Department; and Ms. McGee, a tenured assistant professor in the Junior Division (collectively, "Plaintiffs"). On April 8, 2013, the two suits were consolidated by order of the court. On July 6, 2015, Dr. Kaltenbaugh, Dr. Robinson, and Mr. Thangada filed a joint motion to dismiss, advising the court that they had settled or resolved their claims against the Board.

In their Petitions, Plaintiffs contend that they were denied their property rights of tenure by being "furloughed" without pay or benefits, which was a removal from their tenured positions. They allege that SUNO's removal of Plaintiffs was an unconstitutional denial of due process in violation of the Louisiana and United States Constitutions. . . .

. . . .

2

On December 9 and 10, 2015, a bench trial was held before Judge Lynn Luker, Judge *Pro Tempore*.[1] Judge Luker's appointment ended before a decision was rendered. On August 1, 2018, the trial was concluded before Judge Nakisha Ervin-Knott after an additional day of testimony.

*Kaltenbaugh*, 2018-1085, 2018-1086, pp. 1-4, 282 So.3d at 1136-37 (footnote omitted).

### August 14, 2018 Trial Court Judgment

The trial court signed a judgment on August 14, 2018, against the Board and in favor of the Plaintiffs. In the judgment, in addition to judicial interest and costs, the trial court awarded loss of income damages measured at each Plaintiff's salary for three years: an award of $162,618.00 to Dr. Williams-Scott; an award of $135,666.00 to Ms. McGee; and an award of $125,277.00 to Dr. Perry. The judgment also provided that "costs [were] to be fixed by the [trial] [c]ourt." On August 23, 2018, the Board filed a Motion for New Trial, which the trial court denied. *Kaltenbaugh*, 2018-1085, 2018-1086, p. 4, 282 So.3d at 1137.

### Representation by Mr. Zanders

Beginning in 2009 and through the trial court's ruling on the Board's Motion for New Trial, Mr. Zanders represented Dr. Perry, Dr. Williams-Scott, and Ms. McGee as their attorney in the underlying lawsuit. The record before this Court contains a December 9, 2009 e-mail from Mr. Zanders to Dr. Perry, Dr. Williams-Scott, and Ms. McGee, and attached to it is a "Legal Representation Agreement." The Legal Representation Agreement provided that Dr. Perry, Dr. Williams-Scott,

---

[1] We note a discrepancy in the record before this Court. In the prior appeal in this matter, this Court listed the date of the bench trial before Lynn Luker, Judge Pro Tempore, as December 9 and 10, **2015**. However, the trial court's August 14, 2018 judgment regarding the underlying lawsuit, which is discussed more fully in the next section of this Opinion, stated that "[this] matter initially came before the Court December 9 through 10, **2014** before Lynn Luker, Judge Pro Tempore, Presiding." (Emphasis added).

and Ms. McGee "formally retain[ed] the legal services of [Mr. Zanders]" and as compensation for his services would pay Mr. Zanders an initial legal fee of $5,000.00, which would be payable upon signing of the agreement. Additionally, the Legal Representation Agreement stated:

> Any attorney fees beyond the initial fee to secure legal representation, will be sought from the [SUNO] Defendants as part of the judgment or legal settlement in this case. Should the court not awar[d] legal fees, each CLIENT shall be responsible for her/his pro rata share of the outstanding legal fees at the end of the case. . . . The CLIENTS shall be responsible for legal costs (court filings, depositions, etc.)

However, the agreement is not signed by Mr. Zanders, Dr. Perry, Dr. Williams-Scott, and Ms. McGee.

Additionally, the record before this Court contains a January 21, 2015 e-mail from Mr. Zanders to Dr. Perry, Dr. Williams-Scott, and Ms. McGee. The e-mail stated, in pertinent part:

> 1. There is but one [attorney] fee for both trials as well as an appeal, if necessary. That fee is 33% of the amount recovered from [SUNO] - - - - minus the $5,000 fee that was paid initially.
>
> 2. In Breach of Contract lawsuits, the law does not force the employer, [SUNO] to be responsible for legal fees. . . . If we prevail. A motion for fees [will not] change the law. This hold[s] true for personal injury cases as well. Civil rights cases in federal court or [a] contract dispute where attorney fees are written in the contract would be two exceptions.

The record does not contain a response to the January 21, 2015 e-mail from Dr. Perry, Dr. Williams-Scott, or Ms. McGee.

### *January 2019 Termination of Attorney-Client Relationship*

However, after the trial court rendered its August 14, 2018 judgment in their favor, two of the Plaintiffs, Dr. Williams-Scott and Ms. McGee, sought to terminate their attorney-client relationship with Mr. Zanders. They notified Mr. Zanders of this desire in an October 4, 2018 letter and notified the trial court in an

4

October 9, 2018 letter. Then, on January 4, 2019, Dr. Williams-Scott and Ms. McGee filed a "Motion and Order to Terminate Counsel Willie Zanders." Thereafter, on January 16, 2019, Mr. Zanders filed a Motion to Withdraw regarding his attorney-client relationship with Dr. Williams-Scott and Ms. McGee, noting that Dr. Williams-Scott and Ms. McGee expressed a "desire . . . to either represent themselves or seek new counsel . . . . " In the Motion to Withdraw, Mr. Zanders stated that the attorney-client relationship between himself and Dr. Perry remained unaffected by the motion. Additionally, Mr. Zanders "reserve[d] the right to seek reasonable attorney fees in due course . . . ." The trial court granted Mr. Zanders' Motion to Withdraw on January 17, 2019. That same day, the trial court denied as moot the "Motion and Order to Terminate Counsel Willie Zanders" filed by Dr. Williams-Scott and Ms. McGee. According to the record before this Court, Dr. Williams-Scott and Ms. McGee chose to represent themselves after the termination of their attorney-client relationship with Mr. Zanders rather than to hire new counsel.

***Opinion Rendered on Prior Appeal***

In an October 23, 2019 Opinion, this Court affirmed the trial court's August 14, 2018 judgment. *Kaltenbaugh*, 2018-1085, 2018-1086, p. 22, 282 So.3d at 1147.[2] On January 28, 2020, the Louisiana Supreme Court denied a writ application subsequently filed by the Board. *Kaltenbaugh v. Bd. of Supervisors*, 2019-001871 (La. 1/28/20), 291 So.3d 1061.

---

[2] On October 22, 2018, the trial court signed an order filed by the Board, which sought a devolutive appeal of the trial court's August 14, 2018 judgment.

***Dr. Perry's and Mr. Zanders' September 27, 2021 Motion for Post-Judgment Relief***

On September 27, 2021, one of the Plaintiffs, Dr. Perry, and his attorney, Mr. Zanders, filed an "Ex Parte Motion and Order for Post-Judgment Relief." The Motion for Post-Judgment Relief sought substitution of Dr. Williams-Scott (then deceased)[3] by her legal successors per La. C.C.P. art. 801;[4] an order that money appropriated by the Louisiana Legislature to pay the August 2018 judgment be deposited into the registry of the trial court for disbursal;[5] and a show cause hearing to set attorney fees and costs. The Motion for Post-Judgment Relief noted that even after Mr. Zanders no longer represented Dr. Williams-Scott and Ms. McGee, "[h]e was careful in drafting legal argument that supported the [August 14, 2018] judgment (and all [P]laintiffs) . . . ."

In response to the Motion for Post-Judgment Relief, the trial court handed down an Order on October 5, 2021, which ordered that the check to be issued by the State of Louisiana and the State Treasurer to pay the August 14, 2018 judgment be deposited into the registry of the court for subsequent disbursal. The trial court's

---

[3] According to the record, Dr. Williams-Scott died on July 29, 2020.

[4] Louisiana Code of Civil Procedure Article 801 states that "[w]hen a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality."

[5] Louisiana Revised Statutes 13:5109(B)(2) provides:

Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

October 5, 2021 Order also set a hearing for October 28, 2021, on the Motion for Post-Judgment Relief.

### Ms. McGee's October 20, 2021 Motion to Strike and Mr. Zanders' Memorandum in Opposition

On October 20, 2021, in response to the Motion for Post-Judgment Relief, Ms. McGee filed a "Motion to Strike and Response to [Ex Parte] Motion and Order for Post Judgment Relief" (hereinafter "Motion to Strike"). Subsequently, on October 26, 2021, Mr. Zanders filed a Memorandum in Opposition to the Motion to Strike (hereinafter "Memorandum in Opposition"). In his Memorandum in Opposition, Mr. Zanders explained that he represented Dr. Perry, Dr. Williams-Scott, and Ms. McGee for nearly nine years from December 2009 until Ms. McGee and Dr. Williams-Scott first notified him that they wished to terminate his representation in October 2018. He noted that even after Dr. Williams-Scott and Ms. McGee terminated his representation, he continued to represent Dr. Perry and that he was the only attorney on the plaintiff side to file a brief and present oral argument in the prior appeal before this Court and to file an opposition to the Board's writ application to the Louisiana Supreme Court. Further, Mr. Zanders explained that he "had taken steps to have the State Legislature pay the [August 14, 2018] judgment . . . ." Additionally, Mr. Zanders attached to the Memorandum in Opposition an October 23, 2021 e-mail from Dr. Perry to himself. In the e-mail, Dr. Perry stated that he wrote the e-mail "to affirm [the] agreement that [Mr. Zanders] should receive 33.33%, that is one third of the payment [Dr. Perry is] to receive for [Mr. Zanders'] legal services and success from the settlement in representing [Dr. Perry] and [his] colleagues in the case of illegal furlough against [SUNO]."

***Mr. Zanders' October 26, 2021 Statement of Costs & Fees***

Thereafter, on October 26, 2021, Mr. Zanders filed a "Statement of Costs & Fees," in which he stated that his "attorney fee in the [underlying lawsuit] was one-third or 33.3% of the judgment and judicial interest awarded to each [P]laintiff, Dr. Robert Perry, Dr. Shirley Williams-Scott, and Ms. Audrey S. McGee." Mr. Zanders stated that $703.00 in costs were due to him after subtracting the $5,000.00 advance payment that he had already received from the Plaintiffs.[6] Additionally, Mr. Zanders asserted that he and each of the Plaintiffs owed $7,000.00 per person to pay the "co-counsel attorney/lobbyist [] who assisted with and coordinated all matters related to the payment of the [August 14, 2018] [j]udgment by the State Legislature and State Treasurer." He summarized the underlying lawsuit as involving "nearly a decade of complex litigation" and explained that "the amount of money to be recovered by the Plaintiffs . . . was five (5) times more than [those] who settled their cases against [SUNO]." He contended that "[t]he fees and costs [were] very reasonable and fair and should be awarded as requested."

***October 28, 2021 Hearing on Motion for Post-Judgment Relief***

On October 28, 2021, the trial court held a hearing on the Motion for Post-Judgment Relief. Ms. McGee attended the hearing, which was held via Zoom, and represented herself. Also present at the hearing was counsel for the administrator of the estate of Dr. Williams-Scott, who explained to the trial court that he and Mr.

---

[6] Mr. Zanders stated that the total costs incurred in the underlying lawsuit amounted to $5,703.00. He broke down the individual costs as follows: printing cost of $1,500.00; a trial transcript cost of $203.00; travel costs between Baton Rouge and New Orleans, Louisiana, of $2,500.00; deposition costs of $1,000.00; and court costs of $500.00. After deducting a $5,000.00 advance that he had already received from the clients during the underlying lawsuit, Mr. Zanders arrived at a cost of $703.00 owed to him.

Zanders had come to an agreement regarding that portion of the Motion for Post-Judgment Relief concerning attorney fees and costs. Additionally, Dr. Perry attended the hearing, and the trial court asked him whether he was "satisfied with the attorney[] fees and costs submitted to him." Dr. Perry responded that he was "okay" with the attorney fees and costs submitted to him and explained that "a third of whatever [he] were to receive would be paid to [Mr.] Zanders for his services and legal advice . . . ."

Further, Mr. Zanders explained to the trial court that he had documentation from the State Treasurer confirming the appropriation by the Louisiana Legislature of the money to pay the August 14, 2018 judgment. However, Ms. McGee objected to the Motion for Post-Judgment Relief, arguing, in part, that the money had not been appropriated. The trial court noted Ms. McGee's objection but orally granted the Motion for Post-Judgment Relief.

***November 30, 2021 Judgment***

On November 30, 2021, the trial court rendered a written judgment granting the Motion for Post-Judgment Relief. The judgment stated:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion for Post-Judgment Relief filed on behalf of [Dr.] Perry, Plaintiff, and Attorney [Mr.] Zanders, be and is hereby GRANTED.
>
> . . . .
>
> **IT IS FURTHER, ORDERED, ADJUDGED AND DECREED** that Attorney [Mr.] Zanders shall be paid attorney fees of one-third (33.3%) of the judgment and judicial interest awarded to each Plaintiff ([Dr.] Perry, Ms. McGee, and Dr. Williams-Scott] /Portia Williams as Administrator/Personal Representative of the Estate of [Dr.] Williams-Scott for services rendered in connection with the August 14, 2018 judgment of this Court: [Dr.] Williams-Scott - $162, 618.00; [Ms.] McGee-$135,666.00; and [Dr.] Perry - $125,277.00— plus judicial interest from date of demand.

**FINALLY, IT IS ORDERED, ADJUDGED AND DECREED** that the following costs shall be paid from the judgment and judicial interest awarded to each Plaintiff ([Dr. Perry, Ms. McGee, and Dr. Williams-Scott] (Deceased) / by Portia Williams, as Administrator/Personal Representative of the Estate of [Dr.] Williams-Scott:

Co-Counsel and Lobbyist Costs---------A total of Twenty Eight Thousand Dollars ($28,000.00) is owed in costs for professional services by Attorney Rodney Braxton, rendered in connection with payment of the judgment by the State of Louisiana. Each plaintiff and Attorney [Mr.] Zanders will pay Attorney Rodney Braxton Seven Thousand Dollars ($7,000) for these costs, [totaling] $28,000.00.

Other Costs (Printing, Travel, Depositions, Trial Transcript, etc.) ----------$5,793.00
Less Advance Payment from Plaintiffs ($5,000.00/$ 1666.66 per client) -$5,000.00
Costs due and payable from each plaintiff = $264.33, for a total of---------- $ 793.00

Ms. McGee's timely appeal of the November 30, 2021 judgment follows.

## ASSIGNMENT OF ERROR

On appeal, Ms. McGee raises one assignment of error, namely that the November 30, 2021 judgment is "void." In support, she lists six reasons that the judgment is void, namely (1) Lack of Jurisdiction; (2) Lack of Inherent Power; (3) Lack of Subject Matter Jurisdiction; (4) Lack of Personal Jurisdiction; (5) Lack of Due Process; and (6) Violation of Pleading. Ms. McGee's reasons in support of her assignment of error that the trial court's November 30, 2021 judgment is void can be grouped into four issues. The first issue is whether the trial court had jurisdiction, subject matter jurisdiction, and personal jurisdiction. The second issue is whether Ms. McGee's due process rights were violated. The third issue is whether the trial court had the authority to award attorney fees and costs to Mr. Zanders. The fourth and final issue is whether the trial court abused its discretion

10

in the amount of attorney fees awarded. Prior to addressing the merits, we turn to the standard of review.

## STANDARD OF REVIEW

"Whether attorney[] fees should be awarded is left to the sound discretion of the trial court and an award should not be disturbed on appeal absent an abuse of discretion." *Doe v. La. Health Serv. & Indem. Co.*, 2016-0552, p. 5 (La. App. 4 Cir. 3/15/17), 214 So.3d 99, 103 (quoting *Dixie Servs., L.L.C. v. R & B Falcon Drilling USA, Inc.*, 2005-1212, 2006-1209, p. 9 (La. App. 4 Cir. 3/21/07), 955 So.2d 214, 220). *See also Brown v. ANPAC La. Ins. Co.*, 2013-1375, p. 4 (La. App. 4 Cir. 2/26/14), 135 So.3d 1192, 1195 (citing *Verges v. Dimension Dev. Co.*, 2008-1336, p. 7 (La. App. 4 Cir. 2/10/10), 32 So.3d 310, 314). However, "such discretion may only be exercised after a determination is made that the fees are in fact authorized." *Billieson v. City of New Orleans*, 2016-1143, p. 9 (La. App. 4 Cir. 8/2/17), 224 So.3d 1091, 1097 (citing *Dixie*, 2005-1212, 2006-1209, p. 9, 955 So.2d at 220-21).

## DISCUSSION

### *Jurisdiction, Subject Matter Jurisdiction, and Personal Jurisdiction*
### Jurisdiction

In her first reason in support of her assignment of error that the judgment is void, Ms. McGee contends that the judgment is void due to a lack of jurisdiction, and she cites La. C.C.P. art. 1 in support of her contention. Louisiana Code of Civil Procedure Article 1 defines jurisdiction as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." Further, La. C.C.P. art. 2088 provides, in pertinent part:

A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to do any of the following:

. . . .

(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal.

. . . .

(10) Set and tax costs, expert witness fees, and attorney fees.

In interpreting La. C.C.P. art. 2088, this Court has further explained that "the enumerated list of matters in [La. C.C.P. art. 2088] over which the trial court retains jurisdiction is not exclusive, and that the inquiry on this issue is instead whether the matters in question are reviewable in the appeal." *Doe*, 2016-0552, p. 4, 214 So.3d at 102 (quoting *Law Offices of Fred L. Herman, APLC v. Helmer*, 2013-0235, p. 4 (La. App. 5 Cir. 10/9/13), 128 So.3d 310, 312). In *Doe*, this Court determined that the trial court had not been divested of jurisdiction over an attorney fee dispute because the trial court had "specifically reserved determination of the amount of attorney[] fees for future adjudication [in its 2014 judgment], and this issue was not reviewed by this Court on the original appeal of the 2014 trial judgment." 2016-0552, p. 5, 214 So.3d at 103.

In the case *sub judice*, as in *Doe*, the issues in the November 30, 2021 judgment were not reviewed by this Court in the prior appeal. *See Kaltenbaugh*, 2018-1085, 2018-1086, 282 So.3d 1133. Moreover, the trial court specified in the prior August 14, 2018 judgment that costs were "to be fixed by the Court." Thus, following La. C.C.P. art. 2088 and this Court's holding in *Doe,* the trial court was

12

not divested of jurisdiction over these issues. Ms. McGee's argument that the trial court lacked jurisdiction is without merit.

**Subject Matter Jurisdiction**

Ms. McGee also asserts that the November 30, 2021 judgment is void due to a lack of subject matter jurisdiction and cites La. C.C.P. art. 2 in support of her assertion. Louisiana Code of Civil Procedure Article 2 defines jurisdiction over the subject matter as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." Further, La. Const. art. 5, § 16 states that "[e]xcept as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters." Considering the foregoing, the trial court had subject matter jurisdiction over this civil matter.

**Personal Jurisdiction**

Additionally, Ms. McGee argues that the judgment is void due to a lack of personal jurisdiction: she cites La. C.C.P. art. 6 in support and claims that she was not served with the Motion for Post-Judgment Relief. Louisiana Code of Civil Procedure Article 6 defines "[j]urisdiction over the person" as "the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." In pertinent part, La. C.C.P. art. 6 explains that a court's exercise of personal jurisdiction requires:

> (1) The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201.

13

(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state.

(3) *The submission of the party to the jurisdiction of the court* by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.

(Emphasis added). In interpreting La. C.C.P. art. 6, this Court has explained that a party waives an objection to personal jurisdiction by an appearance of record, which includes the filing of a pleading and appearing at a hearing. *Glass v. Alton Ochsner Med. Found.*, 2002-0412, p. 12 (La. App. 4 Cir. 11/6/02), 832 So.2d 403, 410 (citing *Poret v. Billy Ray Bedsole Timber Contractor, Inc.*, 31,531, p. 2 (La. App. 2 Cir. 1/22/99), 729 So.2d 632, 633). Thereafter, the court's power and authority to render a judgment against the party is based upon the party's submission to the exercise of personal jurisdiction by the court. *Id.*, 2002-0412, p. 13, 832 So.2d at 410 (citing La. C.C.P. art. 6(A)(3)).

In this matter, Ms. McGee and the other plaintiffs commenced the underlying lawsuit when they filed their petitions in 2006 in the Civil District Court for the Parish of Orleans. Additionally, Ms. McGee appeared and represented herself at the October 28, 2021 hearing on the Motion for Post-Judgment Relief. Thus, Ms. McGee submitted herself to the jurisdiction of the Civil District Court for the Parish of Orleans when she filed suit there and appeared at the hearing on the Motion for Post-Judgment Relief.

Moreover, we note that the record contradicts Ms. McGee's assertion that she was not served with the Motion for Post-Judgment Relief. The Certificate of Service for the Motion for Post-Judgment Relief lists Ms. McGee as one of the parties to be served and provides both her mailing address and e-mail address. Further, Ms. McGee's own brief to this Court counters her assertion, wherein she

14

notes that she received the Motion for Post-Judgment Relief in an October 8, 2021 e-mail from Mr. Zanders. The fact that Ms. McGee filed the Motion to Strike regarding the Motion for Post-Judgement Relief also evidences that she received it. Therefore, her argument that the November 30, 2021 judgment is void because the trial court lacked personal jurisdiction is without merit.

***Due Process***

In her fifth reason to support her assignment of error that the November 30, 2021 judgment is void, Ms. McGee argues a lack of due process. She cites to the Fourteenth Amendment of the United States Constitution and "[attests that there was no notification]." The United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. 14, § 1. Further, the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." Due process contains a substantive and a procedural aspect. *Oliver v. Orleans Par. Sch. Bd.*, 2014-0329, 2014-0330, pp. 34-35 (La. 10/31/14), 156 So.3d 596, 619. A violation of substantive due process occurs when someone is deprived "of a constitutionally-protected property or liberty interest." *Id.*, 2014-0329, 2014-0330, p. 35, 156 So.3d at 619-20 (quoting *State v. Bazile*, 2012-2243, p. 12 (La. 5/7/13), 144 So.3d 719, 730). A violation of procedural due process occurs when someone does not receive "notice and an opportunity to be heard" prior to the deprivation of a property or liberty interest. *Id.*, 2014-0329, 2014-0330, p. 35, 156 So.3d at 620 (quoting *Bazile*, 2012-2243, p. 16, 144 So.3d at 732). The procedural due process right of notice and opportunity "must be extended at a meaningful time and in a meaningful manner." *Harris v. Dep't of Police*, 2012-0701, p. 9 (La. App. 4 Cir.

15

9/14/12), 125 So.3d 1124, 1129 (quoting *Moore v. Ware,* 2001-3341, p. 13 (La. 2/25/03), 839 So.2d 940, 949).

Contrary to Ms. McGee's assertion, the record demonstrates that she received the Motion for Post-Judgment Relief and notice of the hearing regarding the Motion for Post-Judgment Relief. In her brief to this Court, Ms. McGee includes a recitation of the October 5, 2021 e-mail she received from the trial court with the date, time, and Zoom link for the forthcoming October 28, 2021 hearing on the Motion for Post-Judgment Relief. Additionally, in her brief, Ms. McGee states that she received an October 8, 2021 e-mail from Mr. Zanders, to which Mr. Zanders attached the Motion for Post-Judgment Relief. Further, the transcript of the October 28, 2021 hearing on the Motion for Post-Judgment Relief demonstrates that Ms. McGee was present at the hearing via Zoom and participated. Based on the record, Ms. McGee had notice and opportunity regarding the Motion for Post-Judgment Relief and the associated hearing; so her contention that the November 30, 2021 judgment is void due to a lack of due process is without merit.

***Authority to Award Attorney Fees and Costs***

Ms. McGee's remaining reasons that the trial court's November 30, 2021 judgment is void, namely "lack of inherent power" and "violation of pleading," can be summarized as her asserting that the trial court did not have the authority to award attorney fees and costs to Mr. Zanders. Ms. McGee contends that "[Mr. Zanders'] proposed unsigned contract was neither an agreement nor a letter of engagement." This Court has explained that "[a]ttorney[] fees are not allowed except where authorized by statute or contract." *Doe,* 2016-0552, p. 5, 214 So.3d at 103 (quoting *Dixie,* 2005-1212, 2006-1209, p. 9, 955 So.2d at 220). *See also*

16

*Billieson*, 2016-1143, p. 9, 224 So.3d at 1097 (noting that "in the absence of statutory or contractual authorization for attorney[] fees, such fees are not allowed" (citing *Dixie*, 2005-1212, 2006-1209, p. 9, 955 So.2d at 220)). Accordingly, we consider whether there was a statutory or contractual basis for the trial court to award attorney fees and costs to Mr. Zanders.

**Statutory Authority**

First, we consider whether the trial court had a statutory basis to award attorney fees and costs to Mr. Zanders. In his brief to this Court, Mr. Zanders states that he brought the Motion for Post-Judgment Relief pursuant to La. C.C.P. art. 4550. Louisiana Code of Civil Procedure Article 4550 is titled "[c]osts and attorney fees" and provides that "[t]he court may render judgment for costs and attorney fees, or any part thereof, against any party, as the court may consider fair." However, La. C.C.P. art. 4550 is codified in Title VIII of the Louisiana Code of Civil Procedure, which section pertains to "Interdiction and Curatorship of Interdicts." Thus, it is not applicable to the matter *sub judice*. Additionally, we have found no statutory authority for attorney fees under the facts of this case.

**Contractual Basis**

Next, we consider whether there is any contractual basis upon which the trial court could have awarded the attorney fees and costs. Any alleged contract in the matter *sub judice* constitutes a contingency fee arrangement for attorney fees because the trial court awarded Mr. Zanders a percentage, specifically 33.3%, of the amount recovered from SUNO by Dr. Perry, Dr. Williams-Scott, and Ms. McGee.

As noted previously, attorney fees are not allowed except where authorized by statute or contract. For a valid contract, four elements must be met, namely (1)

17

the capacity of the parties to contract; (2) mutual consent of the parties; (3) a certain object; and (4) a lawful cause. *Ramos v. Liberty Bank & Trust Co.*, 2018-0612, p. 2 (La. App. 4 Cir. 12/19/18), 262 So.3d 917, 918 (citing *In re Succession of Flanigan*, 2006-1402, p. 6 (La. App. 4 Cir. 6/13/07), 961 So.2d 541, 544; La. C.C. arts. 1918, 1927, 1966, and 1971). Ordinarily, a contract has "the effect of law for the parties . . . ." La. C.C. art. 1983. "[C]ourts are bound to interpret [contracts] according to the common intent of the parties." *6125, L.L.C. v. Strauss*, 2013-0853, p. 12 (La. App. 4 Cir. 12/4/13), 131 So.3d 92, 100-01 (citing La. C.C. arts. 1983 and 2045; La. R.S. 9:1124.115(A)). Yet, "contracts for legal representation, and especially contingency fee contracts, are subject to judicial oversight. *Brown*, 2013-1375, p. 2, 135 So.3d at 1193 (citing *Saucier v. Hayes Dairy Prods., Inc.*, 373 So.2d 102, 118 (La. 1979) (on rehearing); *O' Rourke v. Cairns*, 1995-3054, p. 4 (La. 11/25/96), 683 So.2d 697, 700). "This judicial oversight arises from the judiciary's constitutional duty to enforce the Rules of Professional Conduct adopted and promulgated by the Supreme Court." *Id.* (citing *Saucier*, 373 So.2d at 114-15).

Regarding contracts, La. C.C. art. 1927 provides, in pertinent part, that "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." Louisiana Rule of Professional Conduct 1.5(c) prescribes "a certain formality" for a contingency fee contract. *See* La. C.C. art. 1927. Rule 1.5(c) states, in pertinent part, that "[a] contingent fee agreement shall be in a writing signed by the client." As the Louisiana Third Circuit Court of Appeal has explained, "[t]he rules of Professional Conduct are rules issued and published by the Supreme Court of Louisiana. As such, these rules

are recognized as having the force and effect of substantive law." *Dereyna v. Pennzoil Exploration*, 2004-0097, p. 5 (La. App. 3 Cir. 8/4/04), 880 So.2d 124, 128 (citing *Walker v. State, Dep't of Transp. & Dev.*, 2001-2078, 2001-2079, p. 3 (La. 5/14/02), 817 So.2d 57, 60; *Keene v. Reggie*, 1996-0740, pp. 7-8 (La. App. 3 Cir. 10/22/97), 701 So.2d 720, 725-26).

> The Louisiana Revised Statutes also discuss contingency fee contracts:
>
> By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property.

La. R.S. 37:218(A). This Court has stated that "[i]n order to be enforceable, a contingent fee contract must be in full compliance with the provisions of [La.] R.S. 37:218." *Singleton v. Bunge Corp.*, 364 So.2d 1321, 1324 (La. App. 4 Cir. 1978) (citing *Succession of Vlaho*, 140 So.2d 226, 231 (La. App. 4 Cir. 1962)). Thus, Rule 1.5 and La. R.S. 37:218 mandate that a contingency fee arrangement between an attorney and a client must be both reduced to writing and signed by the client.

Discussing contingency fee arrangements, the Louisiana Fifth Circuit Court of Appeal has held that "without a written fee contract, [an attorney] cannot recover a contingency fee . . . for to do so would be a violation of Rule 1.5." *Caldwell v. State ex rel. Dep't of Soc. Servs., Office of Cmty. Servs.*, 2007-0890, p. 6 (La. App. 5 Cir. 5/27/08), 991 So.2d 546, 549. Additionally, in *Bruno v. Scarkino*, the United States District Court for the Eastern District of Louisiana (hereinafter "Eastern District") concluded that with only an oral contingency fee agreement, "the [Rules of] Professional [Conduct] proscribe [] recovery of fees . . . on a contractual theory [of] recovery (i.e., on the basis of an oral contingent fee contract)." No. 1993-0931, 1993 WL 165699, at *2 (E.D. La. March 11, 1993).

However, in *Bruno*, the Eastern District further stated that "[t]he absence of a written contingency fee contract would not preclude recovery of an attorney for his fees on the basis of quantum meruit." *Id. See also Mogilles v. Allstate Ins. Co.*, No. 2007-6560, 2009 WL 653165, at *2-3 (E.D. La. March 11, 2009) (noting that Rule 1.5 produced a "stricter standard" for contingency fee agreements (citing *Walle Corp. v. Rockwell Graphics Sys., Inc.*, 1991 WL 245974, at *2-3 (E.D. La. Sept. 21, 1992), *aff'd*, 9 F.3d 103 (5th Cir. 1993)); holding that "[t]he law is clear: in order to be awarded a contingency fee, an attorney must get his client to sign a written fee agreement;" and finding that "[i]n situations where there is no written contingent fee contract, the attorney can still recover on a quantum meruit basis" (citing *In re Calm C's Inc.*, 179 Fed. Appx. 911, 913 (E.D. La. 2006)). Thus, the Eastern District has held that an attorney cannot receive attorney fees on a contractual basis in the absence of a written contingency fee contract due to the attorney's failure to comply with Rule 1.5 and La. R.S. 37:218; but the Eastern District has held that an attorney in that situation can recover under a theory of quantum meruit.

Mr. Zanders points to two documents in the record as support for his fees and costs. The first document is the December 9, 2009 e-mail, to which Mr. Zanders attached the Legal Representation Agreement that provided for the initial $5,000.00 legal fee and stated that Dr. Perry, Dr. Williams-Scott, and Ms. McGee were each responsible for his or her pro rata share of the outstanding legal fees at the end of the case and that they were responsible for legal costs. The second document is the January 21, 2015 e-mail from Mr. Zanders to Dr. Perry, Dr. Williams-Scott, and Ms. McGee, which provides for an attorney fee of 33% of the amount recovered from SUNO. Neither of these documents was signed by Dr.

20

Perry, Dr. Williams-Scott, and Ms. McGee though. Further, a review of the record reveals no other document constituting a written, signed contingency fee agreement. Therefore, we turn to the law on quantum meruit.

**Quantum Meruit**

The basis for a claim of quantum meruit is La. C.C. art. 2298, which is titled "[e]nrichment without cause; compensation." It provides, in pertinent part, that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." In *Broussard, Broussard & Moresi, Ltd. v. State Auto & Casualty Underwriters Co.*, the Louisiana Third Circuit Court of Appeal explained that in the absence of a contract, "an attorney may, under some circumstances, recover compensation for services rendered and expenses incurred from those who have benefited from his efforts." 287 So.2d 544, 548 (La. App. 3 Cir. 1973) (citing *La. State Mineral Bd. v. Albarado*, 248 La. 551, 568, 180 So.2d 700, 707 (1965); *In re Interstate Trust & Banking Co.*, 235 La. 825, 844, 106 So.2d 276, 282 (1958) (on rehearing)). *See also Robinson v. Bethay*, 338 So.2d 969, 970-71 (La. App. 4 Cir. 1976). In the matter *sub judice*, the record demonstrates that Ms. McGee benefitted from Mr. Zanders' legal services and the expenses he incurred in obtaining the August 14, 2018 judgment in her favor, as well as the fees subsequently paid to the lobbyist who assisted in securing the Louisiana Legislature's appropriation of the funds to pay that judgment.

**The American Rule**

Moreover, we note that "the basic point of reference when considering the award of attorney[] fees is the bedrock principle known as the American Rule" and that it further supports upholding the trial court's award of attorney fees to Mr. Zanders. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S.Ct. 2158,

21

2164, 192 L.Ed.2d 208 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53, 130 S.Ct. 2149, 2156-57, 176 L.Ed.2d 998 (2010)). As the United States Supreme Court has explained, the American Rule provides that "[e]ach litigant pays his [or her] own attorney[] fees, win or lose, unless a statute or contract provides otherwise." *Id.* As already determined, there is no statutory or contractual basis for an award of attorney fees to Mr. Zanders; thus, each of his clients, including Ms. McGee, was responsible for paying attorney fees to him under the American Rule.

Considering the foregoing law regarding quantum meruit and the American Rule principle, there is both statutory and jurisprudential support for the trial court to have awarded attorney fees and costs to Mr. Zanders out of the recovery obtained by him for Ms. McGee. Thus, we conclude that the trial court acted within its discretion in awarding attorney fees and costs to Mr. Zanders.

### *Award*

Finally, we consider the amount that the trial court awarded to Mr. Zanders in attorney fees. As noted previously, a trial court's award of attorney fees "should not be disturbed on appeal absent an abuse of discretion." *Doe*, 2016-0552, p. 5, 214 So.3d at 103 (quoting *Dixie*, 2005-1212, 2006-1209, p. 9, 955 So.2d at 220). "Factors to be considered . . . in making an award of attorney[] fees include the degree of professional skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the time devoted to the case. *Dixie*, 2005-1212, 2006-1209, p. 9, 955 So.2d at 221 (citing *Domite v. Imperial Trading Co.*, 1994-0016, p. 8 (La. App. 3 Cir. 8/3/94), 641 So.2d 715, 720; *Adams v. Franchise Fin. Corp. of Am.*, 1996-0855, p. 10 (La. App. 3 Cir. 2/5/97), 689 So.2d 572, 577). With these factors in mind, we note that the record reveals that Mr. Zanders

22

represented Ms. McGee from December 2009 until she and Dr. Williams-Scott first notified him that they wished to terminate his representation in October 2018. During that time, two different trial court judges presided over the trial of this matter due to the length of time surrounding its resolution. Ultimately, Mr. Zanders successfully represented Ms. McGee and helped her to obtain an award of $135,666.00. Thereafter, the record demonstrates that Mr. Zanders worked toward having the Louisiana Legislature appropriate the money necessary to pay the August 14, 2018 judgment. In particular, Mr. Zanders hired a lobbyist, who successfully assisted in securing the appropriation. Though Mr. Zanders no longer represented Ms. McGee by that time, his actions benefitted her. Additionally, the underlying lawsuit involved complex facts and legal issues in employment law. Under these circumstances, we conclude that the trial court did not abuse its discretion in its award of 33.3% of Ms. McGee's recovery to Mr. Zanders.

## DECREE

For the foregoing reasons, the trial court's November 30, 2021 judgment, which awarded attorney fees and costs to Mr. Zanders, is affirmed.

**AFFIRMED**